## STEGALL v. CITY OF CHATTANOOGA et al.

Eastern Section. September 14, 1932.

Petition for Certiorari denied by Supreme Court, February 14, 1933.

C. W. K. Meacham, and R. E. L. Cooke, both of Chattanooga, for plaintiff in error.

J. W. Anderson, and Eugene Tatum, both of Chattanooga, for City of Chattanooga.

C. J. Lynch, of Chattanooga, for Hamilton County.

PORTRUM, J. This appeal represents five suits tried together, and originally instituted by five plaintiffs against Hamilton County and the City of Chattanooga, successors to the suburban municipality of North Chattanooga, for damages to abutting property on Crewdson Street, formerly a street in the Municipality of North Chattanooga, but now a street in the City of Chattanooga, 'and growing out of a changed grade in the establishment of a sidewalk improvement district by the Municipality of North Chattanooga. Some months after the institution of these suits, three of the plaintiffs' wives joined with their husbands as parties plaintiff by amendment. The cases were heard together before the Court and a jury, and at the conclusion of the plaintiffs' proof the Court directed a verdict in favor of Hamilton County, but overruled the motion of the city. At the conclusion of all the evidence the city renewed its motion for a directed verdict, and the Court, upon consideration, granted it, and directed the jury to return a verdict in favor of the defendants. The plaintiffs filed motions for a new trial, and have appealed to this court. Counsel have consolidated their assignments of error in this Court, assigning errors applicable to the original plaintiffs, and to the parties made plaintiffs by amendment, and to the action of the Court in directing a verdict against the County. We will dispose of the appeals in the same order.

The declarations allege that the plaintiffs were the owners of the property described therein, abutting on Crewdson Street, a street owned and controlled by the defendant Hamilton County, and within the territory of the Town of North Chattanooga, a municipal corporation in Hamilton County; that within twelve months the County, Town, and City of Chattanooga had begun, continued and completed excavating, surfacing, paving and improving said street at a new grade, reducing the grade from twelve to thirteen feet below the old grade, thereby creating and leaving a high, steep and precipitous bank along the front of said property, et cetera; that in October, 1929, the City of Chattanooga annexed the territory of North Chattanooga, including the said street, and assumed, and became legally bound for all obligations of the town, and joined in the improvements of said street. Therefore the plaintiff sued for $10,000 in damages, et cetera.

The defendant Hamilton County filed pleas of "Not guilty" to all the declarations; and the City of Chattanooga likewise filed pleas of "Not guilty," and also special pleas, reading as follows:

"Comes the defendant, City of Chattanooga, Tennessee, through its attorney, and for further pleas to the declaration filed against it in this cause says that plaintiffs petitioned the Highway Commission of Hamilton County, Tennessee, to establish a grade on Crewdson Street and release said County from all damages on account of said change of grade, said petition being as follows:

" 'North Chattanooga, Tennessee,
" 'February 15th, 1929.

" 'TO THE HIGHWAY COMMISSION OF
HAMILTON COUNTY, TENNESSEE:       .

" 'We, the undersigned property owners, respectfully petition you to build and construct Crewdson Street, beginning at Orr Street and extending to Tremont Street.

" 'We, agree that the County Engineer of Hamilton County, Tennessee, may establish the street grade on said street, and we release the County of Hamilton from all and any damage that our property may suffer by reason of changing the present grade and establishing a permanent grade on said street.'

"The above petition was signed by the plaintiff, stating that he was the owner of one hundred feet on said Crewdson Street.

"Plaintiff also petitioned the Commissioners of the Town of North Chattanooga, asking that said grade be established, and said petition being as follows:

" 'North Chattanooga, Tennessee,
" 'September 24, 1927.

" 'TO THE COMMISSIONERS OF THE TOWN OF NORTH
CHATTANOOGA, TENNESSEE, IN HAMILTON COUNTY,
TENNESSEE.

" 'The undersigned property owners respectfully petition you
to establish a sidewalk on Crewdson Street, north of Orr Street,
and connect same with Tremont Street.

" 'We agree that the County Engineer of Hamilton County,
Tennessee, may establish the sidewalk grade on said street, and
we release the County of Hamilton and the Town of North Chattanooga from all and any damage that our property may suffer
by bringing said street to a sidewalk grade.'

"The above petition and release were signed by plaintiff,
showing that he owned one hundred feet. The grade of said
street as changed was fixed by the County Engineer according to the petition of plaintiff and others, and plaintiff therefore released the Town of North Chattanooga and its successor,
the City of Chattanooga, from all damages on account of the
change of said grade."

The original plaintiff did not traverse this plea by a general
denial, but filed a replication as follows:

"Plaintiff, for replication to the first special plea of the defendant, City of Chattanooga, Tennessee, says the instruments
set out therein and relied on are not binding and effectual.

"(a) Nor that the change of grade on Crewdson Street
along the front of his property, approximately five feet below
the surface level at approximately seventeen feet below, was
unreasonable, constituted the taking of his property without
compensation, and was not understood and contemplated by
him at the time of signing said instrument, since defendant,
and the town of North Chattanooga failed to furnish him any
plat, drawing or specification, as was usual and customary in
such cases, showing the improvements to be made, the new
grade to be established, and the damage that would be done
to said property; and failed otherwise to acquaint him with
definite facts necessary to enable him to form correct conclusions as to the extent of his waiver;

"(b) For that, as soon as he and other property owners on
said Crewdson Street discovered that defendants were excavating far below the original grade of said street and in the
process of establishing a new grade far below the old grade, so
as to seriously damage their property, they protested, and
threatened to enjoin further operation; thereupon, defendant,
and the Town of North Chattanooga, promised and agreed to

establish a grade not lower than nine feet below the surface of said lot, and, trusting to said new agreement, this plaintiff, and others, allowed the work to proceed. Said new agreement thereby superseded and abrogated the old agreement, and the establishment of a new grade lower than nine feet below the surface of the lot was a violation of that agreement, and the taking of the plaintiff's property;

"(c) For that, in signing said instrument plaintiff had in view and expected his property to be improved and be benefited thereby, and did not contemplate a changed grade that would damage and destroy his property. Therefore, said instruments were without consideration, and are not binding on him."

The defendant City of Chattanooga, for rejoinder to the replication, said:

(a) Plaintiffs knew a lower grade would be necessary on account of the steep hill, and that they agreed thereto, because the grade was made by the County Engineer:

(b) That plaintiffs did not make a new agreement with the Town of North Chattanooga which abrogated the old agreement, and that any verbal agreements with any unauthorized person was not binding on defendant;

(c) That plaintiffs, in signing said instruments, agreed to the grade as made, because said instruments were in writing. and authorized the defendants to have the County Engineer establish the grade, which was done.

These pleadings present the issues upon review here on the appeal of the original plaintiffs. It is conceded that the change of grade of this street damaged the property of the plaintiffs, but it is insisted that this change of grade was anticipated by the plaintiffs, and the damage waived as an inducement to the city to make the improvement. If the plaintiffs are not bound by their solemn written agreements, then they are entitled to 'recover the damages sustained by their property by the lowering of the grade against the city, and the Court erred in directing a verdict against them; on the other hand, if the written instrument is binding against them, there was no error in directing a verdict in favor of the defendant. The assignments of error are numerous and long, but we think we can best dispose of them by setting them out in detail. or the most of them, and disposing of each in turn. The first assignment reads:

"The Court erred in sustaining the motion of defendant City of Chattanooga for a directed verdict at the close of all the evidence. and in directing the jury to return a verdict in favor of said defendant (R., 22, 52, 80, 109, 136).

"This was error:

"(a) Because there was no evidence to support the verdict;

"(b) Because the waiver agreements (R. 11, 12), set up by the special plea of defendant City of Chattanooga, were not valid and binding, and do not bar recovery of damages sustained by plaintiffs;

"(c) Because the purported waiver agreements were never accepted by the Town of North Chattanooga, the grades were never established by the County Engineer, and the work was not done pursuant thereto;

"(d) Because the work on said street was performed under an agreement entered into between the Town of North Chattanooga and Hamilton County on May 21, 1928 (R. 250)."

(a) There is evidence to support the verdict unless the Court finds the written instruments are not binding upon the plaintiffs.

(b) If the waiver agreements set up in the special plea are not valid and binding, it must be for the reason assigned in the plaintiffs' replication, for there is no other issue before us. We call attention again to the replication; we do not think the proof justifies a finding that the new grade was unreasonable and unnecessary, the fixing of the grade was within the discretion of the governmental body, and there is no proof justifying the conclusion that this discretion was abused. We think the written instruments show conclusively that a change of grade was contemplated by the plaintiffs, and the filing of plats and drawings and also specifications were not made a requirement by the instruments. The purpose of the instruments was to waive these formal requirements required by the law where the work is done in the absence of a waiver agreement.

There is no proof in the record of a legal agreement with the Town of North Chattanooga, superseding the written instrument plead and relied upon by the defendant. Evidence of an oral agreement with the town authorities, was attempted to be proven and was excluded, and this evidence will be discussed under an appropriate assignment.

We think there was a consideration supporting this undertaking, and these written instruments, for on the face of them the town certainly suffered a detriment. If the instruments were entered into under a mistake of fact, which seems hardly probable under the circumstances, the plaintiffs' remedy was to be found in a court of equity.

(c) The questions raised under this section of the assignment were not put at issue by appropriate pleadings and are not open for review here.

(d) The same can be said in reference to this section of the assignment, but it seems immaterial to the plaintiffs how the gov-

ernment authorities carried out the work these plaintiffs petitioned for.

"The Court erred in allowing defendants, over the objection of plaintiffs, to introduce in evidence and rely on the two alleged waiver agreements, dated, respectively, September 24, 1927, and February 15, 1929, set up in said defendants' special plea to the declaration, and filed as Exhibits 1 and 2 to the cross-examination of plaintiff.

"This was error, because said instruments were incompetent and inadmissible for the following reasons:

"(a) Because there was no consideration to plaintiffs;

"(b) Because the purported right plead as waived was not an existing right of which plaintiffs had knowledge, actual or constructive;

"(c) Because the instruments undertake to waive further or prospective rights not in existence;

"(d) Because it is not shown in the alleged waived agreements, or otherwise, that plaintiffs knew their rights and intended to waive them;

"(e) Because the grade alleged to have been established was so unreasonable as not to have been understood or contemplated at the time, and is not binding;

"(f) Because the instruments show on their face that no cause of action on behalf of plaintiffs existed at the time of the giving of said purported waivers;

"(g) Because it is not shown by defendants that said street and sidewalk grade were established pursuant to or in reliance on said waiver agreements, and they are not material evidence;

"(h) Because the City cannot set up and rely on the alleged waiver to the defendant County of Hamilton;

"(i) Because it is not shown that the proposition contained in said instruments, was ever accepted and acted on by the defendants;

"(j) Because said instruments are too indefinite and uncertain, and the purported new grade is wholly unreasonable."

These instruments were put in issue by the pleadings, and became relevant as evidence, and none of the reasons assigned justified their exclusion as evidence. These reasons tend to show the non-binding force of the instruments, but do not establish the non-relevancy of the instruments as evidence. It is necessary that the instruments be in evidence before these defences can be advanced, otherwise the Court would be trying collateral issues preliminary to the introductin of evidence upon the main issues, and in the absence of pleas. We think the written instruments were competent

and relevant evidence and should not have been excluded upon objection.

"TESTIMONY OF EMMETT L. KERR, in absence of jury:

"No representative of the defendant City of Chattanooga, or of the Town of North Chattanooga, or of Hamilton County, presented any drawings by any competent engineer showing the grade that the street or sidewalk would be when completed, prior to the time the waiver agreements were signed, and no one connected with the Town or County gave him any information as to what the grade would be when completed, and no resolution had been passed by the County, or by the Commissioners, or any legislative action taken by either of the defendants, establishing and fixing the permanent grade, either for the sidewalk or street purposes, at the time the two petitions were signed; that he had no knowledge as to what the ultimate grade would be, further than the old grade that was then existing; that he did not understand, had no information, and did not contemplate that the grade of the street would be lowered, but naturally expected the improvement would be started at the old road level and the dirt between their property line and the old original road level would be cut out and removed so sidewalks could be placed in front of the property at the old street level, a sidewalk district having been declared. The sidewalks had never been put down; that neither he, Herbert Horton, nor any other person bearing the petitions and getting them signed, gave him any explanation or any information as to the grades that would be established, or exhibited blue prints or drawings that had been made for this street; that if he had known defendants would have cut the grade below the old street level he would not have signed the petition; that his sole purpose in signing said petition was to have the street widened as platted, at the old grade then in existence, and the dirt excavated in front of their property to the then existing street level so that a sidewalk could be put down.

"EMMETT L. KERR, for the purpose of completing the record, testified, out of the presence of the jury, and in support of plaintiffs' replication to the special plea of defendant City of Chattanooga, and, by permission of the Court, same to constitute a part of the record, as follows:

"The Town of North Chattanooga, through its contractor, commenced to excavate Crewdson Street, between Orr and Tremont Streets, about September 3, 1929; and, it becoming apparent that a new grade was being made considerably below the existing grade on Crewdson Street and that it would materially increase the depth of the cut in front of their prop-

erty, he took the matter up with A. Formis, an engineer employed by the Town of North Chattanooga, and protested against a change of grade below the existing grade, and explained that any cut below the old grade exceeded what he and other property owners had in mind, and that it would damage his property and the property of other abutting owners very materially, and would make it impossible to provide means of access to their property from the front, and threatened, unless the work ceased or was established on the existing grade, to enjoin the Town of North Chattanooga and the contractor from proceeding to make a cut or establish a grade below the then existing grade on said street; that said street was a short half block, almost entirely used by the residents living thereon, and that there was no good reason why the grade should be lowered.

"Herbert Horton and Joseph E. Bower were also present, likewise protesting, and concurring in the representations made by him.

"The road ran over the contour of the hill at a natural grade, and the cutting down of the street would leave a deep cut in front of their property.

"Thereupon said engineer agreed to discontinue excavations at the grade he had started, raised the shovel, and pointed out on the street where the grade level under this excavation would be, which was, under the agreement, not to be in excess of nine feet below the highest point on the east side of the street. The engineer further agreed that none of the utility lines then in the street below the grade surface should be disturbed, and that it would not be graded down as low as said lines, that not being necessary.

"That, relying on said agreement following their protest, witness and his associates left, fully expecting the grade not to be lowered more than was agreed upon, and did not get out an injunction. A day or two later they discovered that the street was being cut much lower than the depth agreed upon, and he then took the matter up with Sherman Beck, Mayor of North Chattanooga, and the Board of Commissioners in open meeting, presented a profile showing the situation and the damages they would sustain, and tried to avoid such damage; that the Board of Commissioners and the Mayor of North Chattanooga thereupon agreed that the depth of the cut should not be lower than nine feet below the highest point on the east side of said street, and that the depth of the cut in front of other lots would be proportioned according to the height of the lot above the street, considering the natural contour of the hill. The other parties above mentioned were present at

the Commissioners' meeting and were parties to the same agreement; that, notwithstanding said agreement, and notwithstanding said protest, and notwithstanding the great damage that was being done to plaintiffs' property, the Town of North Chattanooga persisted in excavating and establishing the cut complained of."

The testimony of Mr. Emmett L. Kerr was properly excluded. This testimony is in direct contradiction to the written instruments, which contemplated the change of grade and delegated the fixing of a new grade to the County Engineer. After signing an instrument of this character it is not permissible for a witness to say he did not contemplate a change of grade, for to do so is to contradict the written instrument.

The testimony of this witness in reference to the new agreement, superseding the old, with the city authorities, and his threatened injunction suit is not competent for the reason that a municipal corporation speaks through its minute entry solely, and its contract to be binding against it must be evidenced by resolutions appearing upon its minutes. But under some circumstances a municipality is estopped to rely upon this rule of law, or it may be estopped to deny the execution of a contract entered into between its officers and a third party, but in this case no estoppel is relied upon or plead, and therefore the evidence is not competent upon this ground.

"The Court erred, as to Cecil E. Stegall, in sustaining the motion of defendant City of Chattanooga for a directed verdict at the close of all the evidence, and in directing the jury to return a verdict in favor of said defendant (R. 27).

"This was error:

"(a) Because she was the owner in fee simple of said property, was not a party to said alleged waiver agreements, and had not authorized her husband, R. M. Stegall, to act as her agent in executing said releases and in waiving damage to her property (R. 221);

"(b) Because the City of Chattanooga cannot set up the waiver to the County as a bar to recovery against it."

Mrs. Stegall testified that her husband was her agent, in charge of her property, and that she had knowledge that he had signed it within a month, or within several months after he had done so. She is bound by this testimony and she cannot escape the act of her agent. It was contemplated that the city would make the improvement under an agreement with the County, but the County, under the law was thought responsible for the damages. The parties attempted to relieve the one thought responsible for the damages, and they are now in no position to repudiate the agreement and assert a claim against the city. The city acted upon

these agreements at the urgent solicitation of the signers, and the signers are estopped to question the rights of the city to rely upon the agreement acted upon at their solicitation.

"The Court erred, as to Precious A. Horton, in sustaining the motion of defendant City of Chattanooga for a directed verdict at the close of all the evidence, and in directing the jury to return a verdict in favor of said defendant (R. 57).

"This was error:

"(a) Because she was an owner, as tenant by the entirety, of said property, was not a party to the alleged waiver agreements, and had not authorized her husband, Herbert A. Horton, to act as her agent in executing said alleged releases and waiving damages to said property (R. 223);

"(b) Because the City of Chattanooga cannot set up the alleged release to the County as a release to it."

Mrs. Libbie W. Bower filed a like assignment, but she states she knew her husband signed the agreement, and she agreed to it under the expectation of receiving a benefit from the improvement. However, her case falls in the same category as Mrs. Horton.

Under the common law these tenants by the entireties took no interest in this chose in action for the reason that the husband, who represented the unity of persons, took the cause of action absolutely. This rule of the common law had not been modified by statutes in Tennessee up until 1913, after which time the case of Hux v. Russell, 138 Tenn., 272, 197 S. W., 865, was decided. This case discusses this principle fully and announces this rule. And it is stated that this is the rule in Tennessee, unless the Married Woman's Emancipation Act of 1913, Chapter 26, changed the rule; and this question was not decided because the cause of action under review arose before the passage of Chapter 26.

The Married Woman's Emancipation Act of 1913 did change the rule, for the emancipation of women had the effect of abolishing estates by the entirety. Gill v. McKinney, 140 Tenn., 549, 205 S. W., 416. The reason for this holding is stated in the opinion as follows:

"The estate is an incident of marriage which grew out of the legal union of husband and wife. It arose from the disability of the wife on account of marriage, and cannot exist without it."

To meet this situation and reestablish estates by the entirety the Legislature of 1919 repealed Chapter 26 of the Acts of 1913 by Chapter 141, but to secure to the married woman her emancipation in all other respects it reenacted the Emancipation Act in a modified form by Chapter 126 of the Acts of 1919. The first section of this Act is identical with the Act of 1913, with the exception of a provision which leaves intact the disability of married women in

reference to estate by the entirety. We will quote so much of this section as illustrates the point, italicizing the new matter.

"SECTION 1, Be it enacted by the General Assembly of the State of Tennessee, that married women be, and are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disability of married women and its effect on the rights of property of the wife, is totally abrogated, *except as set out in Section 2 of this Act and subsequent sections thereof*; . . .

"SECTION 2, Be it further enacted, that nothing in this Act shall be construed as abolishing tenancies by the entirety, and affecting the husband's right of courtesy."

We think it was the purpose of this Act to meet the holding in the case of Gill v. McKinney, supra, hereinabove quoted, and to restore the disability of the wife in reference to estate held by her and her husband as estate by the entirety. If these estates cannot exist without the disability of the wife, then the creation of the estate by enactment, necessarily restored the disability, but the Act makes an express exception in this regard. This being true, the law remains as announced in the case of Hux v. Russell, supra, and the chose in action, which is the basis of this suit, passed absolutely to the husband. The wife has no interest in it and is not a necessary or proper party in this suit. She cannot make an issue on it, nor rely upon an error. For this reason her assignments of error are overruled.

The trial judge directed a verdict in favor of the County, since it was stipulated that the County had nothing to do with the establishment of the grade or improvement of the street. If the County were the responsible governmental authority delegated with the duty to do this work, and it permitted another to do the work, it cannot escape liability because it had nothing to do with the work. Knoxville v. Harth, 21 Pickle, 436, 58 S. W., 650. But this was a harmless error for the reason that no cause of action was stated against the County. The damages sought grew out of the change of a grade in the street, located in a municipality, and at common law no right of action arose in favor of an abutting landowner for a change of grade in the street, caused by an internal improvement made by the municipality. Coyne v. Memphis, 10 Cates, 661, 205 S. W., 343. But in order to give the landowner a right of action for his damages, the Legislature in 1891, and also in 1893, passed Acts making the municipality liable for this character of damages. These Acts are codified in Section 1988 of Shannon's Code, and 3404 of the Code of 1932. This law casts no liability upon a county, but consigns it to cities and towns. We think the plaintiffs stated in their declaration a cause of action against the City of Chatta-

nooga, but not against the County of Hamilton. The trial court did not err in directing a verdict in favor of the County.

We find no error in the judgment of the lower court, and it is affirmed with costs.

Snodgrass and Thompson, JJ., concur.