Mae P. Mitchell, Plaintiff-in-Error,

*v.*

Sinclair Refining Company, Defendant-in-Error.

428 S.W.2d 299.

(*Knoxville,* September Term, 1967.)

Opinion filed April 19, 1968.

Petition for Rehearing Denied May 23, 1968.

John A. Armstrong, Greeneville, for for plaintiff in error.

Milligan, Silvers & Coleman, Greeneville, for defendant in error.

Mr. Justice Chattin delivered the opinion of the Court.

This suit was originally brought by Arthur F. Mitchell and wife, Mae P. Mitchell, against Sinclair Refining Company for damages to real estate owned by them as tenants by the entirety.

A plea in abatement was filed which alleged the husband had executed an agreement which relieved defend-

ant from the damages sought. This agreement will be referred to later in this opinion.

The trial judge sustained the plea in abatement. On appeal, the Court of Appeals affirmed as to the husband; but held the plea in abatement did not raise the question the execution of the agreement by the husband alone barred the wife's cause of action, if any.

Accordingly, the Court of Appeals remanded the case as to her.

The declaration alleged plaintiffs owned approximately three acres of real estate by the entirety in Greene County upon which was located their home, a rental house, a business building, which was leased to an operator of a beauty parlor and a barber shop, a grocery store and service station operated by plaintiffs as a retail business.

It was further alleged pursuant to a contract between the husband and defendant, defendant leased to him a gasoline pump and service equipment, including a one thousand gallon gasoline storage tank. It is then alleged, due to the negligence of defendant, the tank was installed improperly and gasoline leaked into a well which furnished water to the buildings. That it was necessary another well be dug at great expense. And that the leakage also damaged the water softening equipment and the surface of the land which caused a devaluation of the land and loss of rental income.

On the remand, defendant filed a plea in abatement as to Mrs. Mitchell. The plea was based on the lease agreement between Mr. Mitchell and defendant. The agreement

is styled an "Equipment Rental Agreement." The agreement contains an exculpatory clause as follows:

"Customer, for itself, its heirs, executors, administrators, successors, and assigns releases, relinquishes and discharges and agrees to indemnity, protect and save harmless Sinclair, its successors and assigns, of and from any and all claims, demands and liability for any loss, damage, or injury, including death, or other like or different casualty to persons (whether they be third persons, customer, or employees of either the parties hereto) and to property (whether it be that of either of the parties thereto or third persons), by reason of any leakage, fire or explosion of or from any such equipment or any part thereof, or of any gasoline, oils, or other products in or about or contained in the same, or by reason of any defect in the construction or installation of such equipment, or by reason of the use or operation of such equipment, or by reason of the placing, erection, falling or dislocation of such equipment or any part thereof, or by reason of any other casualty, whether due to the negligence of Sinclair or otherwise."

Defendant's plea alleged the exculpatory clause was binding on Mrs. Mitchell, even though she did not sign the agreement; and, further, Mrs. Mitchell does not have a right as a tenant by entirety to maintain the action, for the reason the right to the use, possession and control of the property is vested exclusively in the husband during coverture and since he cannot recover the wife cannot.

The matter was tried on a stipulation of facts. The trial judge sustained the plea on authority of *In Re Plowman's Guardianship,* 217 Tenn. 487, 398 S.W.2d 721

(1966); in which this Court held a husband was not, obligated to account to his wife during coverture for rents and profits which he had collected from real property owned by them as tenants by entirety. Specifically, the Court said:

"We have no direct holding on the point in issue in this case, but we are satisfied from our examination of the law generally, and the text writers on the subject, that a tenancy by the entirety confers upon the husband the right to possession and control of the property involved, together with the use and profits therefrom for which he is not required to make an accounting to his wife.

"To the same effect is 26 Am.Jur., Husband and Wife, sec. 78, which reads: 'A husband has, at common law, the right, in his own right and jure uxoris, to the control, possession, and usufruct of property in which he and his wife have an estate by the entireties.' "

Plaintiff has perfected an appeal to this Court and assigned as error the following:

"The trial court erred in holding and finding that the husband had the right jure uxoris to execute the exculpatory agreement.

"The trial court erred in holding and finding that the wife, the plaintiff-in-error, as a tenant by the entirety her husband living, did not have a cause of action for damages by tort to real estate."

We will consider the second assignment first.

The thrust of this assignment is the insistence a wife should be legally entitled to institute and maintain an

action alone for a tortious injury to her interest in real estate, as a tenant by entirety, excluding the right to possession, control, rents, use and profits during coverture.

The disabilities of coverture of married women were totally abrogated by Chapter 26, Public Acts of 1913, codified as T.C.A. Section 36-601, except as set out in Chapter 126, Public Acts of 1919, codified as T.C.A. Section 36-602, which says nothing in Chapter 26 of the Public Acts of 1913 shall be construed as abolishing tenancies by entirety.

In the case of *Stegall v. City of Chattanooga*, 16 Tenn. App. 124, 66 S.W.2d 266 (1932), it was held Chapter 126, Public Acts of 1919, restored the disability of the wife with reference to estates held by her and her husband as tenants by entirety. See also *Preston v. Smith*, 41 Tenn. App. 222, 293 S.W.2d 51 (1956).

In the case of *Gill v. McKinney*, 140 Tenn. 549, 205 S.W. 416 (1918), the Court held the Married Women's Emancipation Act of 1913 had the effect of abolishing estates by entirety. The reason for this holding is stated in the opinion as follows:

"We think the legislature intended to abolish estates by the entireties by the foregoing act. We also think the language employed by it directly affects that result. The estate is an incident of marriage which grew out of the legal union of husband and wife. It arose from the disability of the wife on account of marriage, and cannot exist without it. Because she had no legal existence she could not take an equal moiety with her husband, but being named with him as grantee in the deed, it was so unjust for her not to take at all, the

judges thought she must take in event she survived her husband. In that case her legal existence would be restored to her and she could enjoy the land conveyed in the deed.''

To meet this decision and re-establish estates by entirety the legislature of 1919 repealed Chapter 26, Public Acts of 1913, but to secure to the married woman her emancipation in all other respects it re-enacted the Emancipation Act in a modified form by Chapter 126 of the Acts of 1919. The first section of this Act is identical with the Act of 1913, with the exception of a provision which leaves intact the disability of married women in reference to an estate by entirety. Too, if an estate by entirety cannot exist without the disability of the wife, then the re-establishment of the estate by the legislature necessarily restored the disability.

Under the common law, a chose in action for damages to property owned by entirety, although the claim was one for a tortious injury to real estate, vested absolutely in the husband. *Stegall v. City of Chattanooga,* supra; *Hux v. Russell,* 138 Tenn. 272, 197 S.W. 865 (1917).

"At common law a husband may maintain an action, in his own name alone, for trespass or injury committed on real property held by him and his wife by the entireties. The wife is not entitled to maintain such suit or share in the recovery, since the husband is entitled exclusively to the possession and usufruct of such property.'' 26 Am.Jur., Husband and Wife, Section 124, page 750.

For the foregoing reasons, we conclude the cause of action vested absolutely in the husband to the exclusion of the wife during coverture.

By her first assignment of error, plaintiff maintains her husband had no right jure uxoris to execute the contract, and that, therefore, since she did not sign it she is not bound by it.

In support of her position, plaintiff cites *Irwin v. Dawson,* 197 Tenn. 314, 273 S.W.2d 6 (1954); and *Cartwright v. Giscosa,* 216 Tenn. 18, 390 S.W.2d 204 (1965).

In Irwin a tenant sued a surviving wife for specific performance of a lease which had been signed by her husband only, although the property was owned by both as tenants by entirety, and the court held the wife was not estopped from repudiating the lease by her conduct of silence and her defense of the statute of frauds was good. The Court said:

"Since the passage of the Married Women's Emancipation Act, Code, sec. 8460 it cannot be said that the husband is a dominating personality in the tenancy.

"To make the contract of sale good and valid it must have been signed by all of the owners by themselves, or someone lawfully authorized to sign their names for them, not by one of them alone."

The common law rule which permits a husband the use, possession, and usufruct of an estate by entirety was not raised in the Irwin case, nor was it discussed there.

In Cartwright, this Court held a contract for the sale of realty owned by husband and wife as tenants by entirety could not be enforced against the wife because only the husband had executed it and there was no evidence that he signed as agent for his wife.

Both of the cases cited by the plaintiff involve the sale or disposition of property, with the effect of defeating

the wife's interest therein if the transaction was permitted to stand. In the instant case, the facts show only a contract was signed by the husband for the rental of equipment for the purpose of operating a service station.

By stipulation, the parties have agreed to the following facts: The equipment rental agreement was not signed by the plaintiff, but only by her husband. The suit by the husband against the defendant has already been dismissed by reason of the exculpatory clause in the contract.

The implication is plaintiff's husband was operating the service station as a means of supporting his family. Plaintiff's husband contracted with the defendant pursuant to the use of the land, as he is legally entitled to do, and the plaintiff is bound by the contract during coverture. *Stegall v. City of Chattanooga,* supra.

While the plaintiff has a right to protect her interest in the land, this right does not defeat her husband's right to use the land, and to contract validly pursuant thereto.

There is a distinction between an ownership right and a husband's right to the control and use of an estate by entirety which was recognized by this Court in the case of *Cole Manufacturing Company v. Collier,* 95 Tenn. 115, 31 S.W. 1000, 30 L.R.A. 315 (1895); wherein the Court said:

"And during their joint lives the common law, in the case of this anomalous estate, gave to the husband the full and entire control and possession of the property and the right to collect the rents and profits, vesting

this right, as in the case of the wife's estate in severalty, in jure mariti. *Hall v. Stephens,* 65 Mo. 670. This estate, therefore, being a 'unit of indivisible parts,' in which the wife, no less than the husband, 'is the owner of the whole from the moment of the conveyance to them' and equally with him entitled to the whole *(McCurdy v. Canning,* 64 Pa.St. 39) ; it being apparent, also, that his right to collect the entire rent rests alone in jure mariti, and there being no way for the purchaser of the husband's interest to dispossess him without, at the same time, dispossessing the wife, we have no hesitation in holding that the Act of 1849-50, (Section 3338, Mill & V. Code) excludes such purchasers from possession, as against the wife.''

In the case of *Moore v. Chase,* 25 Tenn. App. 239, 156 S.W.2d 84 (1941), it was held: where husband and wife own property as tenants by entirety, the husband could dispose of his interest only and the wife could maintain an action in equity to set aside a fraudulent deed and instrument in order to recover her interest in the property.

In the case of *Alfred v. Bankers' and Shippers' Insurance Company,* 167 Tenn. 278, 68 S.W.2d 941 (1934), this Court denied a husband a recovery for damage to property held by him and his wife as tenants by entirety. The recovery was denied because the husband had misrepresented himself to the Insurance Company as being the sole owner of the property. The Court said:

"Necessarily the interest of a tenant by the entirety in real estate is of such less value than that of the sole and unconditional owner.

\*    \*    \*    \*    \*    \*

"It is true that as tenants by the entirety the husband and wife are regarded as one. It is, however, a composite one. The unit consists of both husband and wife. Certainly, in a technical sense, the husband is not the sole and unconditional owner of property held by him and his wife as tenants by the entirety, nor is he such owner for practical purposes. He cannot sell or incumber anything but his interest. We have heretofore shown that the interest of the tenant by the entirety is of little more value than the interest of the life tenant."

This is not an action to recover or protect plaintiff's interest in the land, nor is it a suit for permanent injuries to the land such as waste.

Accordingly, the judgment of the trial judge must be affirmed with costs.

BURNETT, CHIEF JUSTICE, and DYER, CRESON and HUMPHREYS, JUSTICES, concur.

On Petition To Rehear.

Petitioner, Mae P. Mitchell, has filed an earnest petition to rehear. It is insisted we overlooked the fact the declaration alleged the seepage of gasoline through the earth polluted the well and land to such an extent as to make the condition permanent.

We considered the allegation the damages were permanent as a mere conclusion on the part of the pleader in the light of the damages sought.

All the damages sought were the result of the seepage of 2,698 gallons of gasoline over a period of twelve

months. It is common knowledge gasoline evaporates. The seepage of the gasoline could only result in a temporary damage to the real estate.

The petition is denied at the cost of petitioner.