Vestal ROBINSON and wife, Ruby
Robinson, Petitioners,

v.

TROUSDALE COUNTY, Tennessee, et al.,
Respondents.

Supreme Court of Tennessee.

Nov. 18, 1974.

Solon Fitzpatrick, Carthage, for petitioners.

James Donoho, Hartsville, for respondents.

## OPINION

HENRY, Justice.

This is an inverse condemnation suit involving the nature of the estate of tenancy by the entireties under Tennessee law and the common law disability of coverture.

Petitioners, husband and wife, sued Trousdale County for damages for the taking of certain real estate owned by them as tenants by the entirety, for the purpose of widening a public road adjacent to their property, and for incidental damages.

The answer of Trousdale County, among other defenses, asserts that petitioners are barred from seeking compensation and damages by virtue of a deed, executed by the husband alone, conveying the property involved to Trousdale County, in fee simple.

The case was tried by the Circuit Judge without the intervention of a jury.

The trial judge held that the husband was estopped to claim any damage because of the deed; that there were no incidental damages, and allowed the wife Five Hundred Thirty Dollars ($530.00) as actual damages for the value of the land taken.

All parties prayed and perfected appeals to the Court of Appeals.

That court affirmed the judgment of the trial court in all respects except as to the ownership and disposition of the money ($530.00), representing the value of the land. The court directed (1) that this sum be held by the Clerk of the trial court and invested by him during the joint married lives of petitioners; (2) that should the husband die first, the entire recovery would be paid to the wife; (3) that should the wife die first the entire recovery would be paid to Trousdale County, and (4) in the event of a divorce, it would be distributed equally between the wife and Trousdale County.

All parties have petitioned this Court for certiorari. We granted the petition of the wife with argument limited to the disposition of the recovery.

A proper determination of this question necessarily involves a consideration of the nature of an estate by the entireties in Tennessee, the rights, benefits and privileges of the tenants, the right of a tenant to convey his or her interest, and the common law disability of coverture.

Our investigation leads us to the conclusion that the decisional law of Tennessee, not only is nebulous and confusing, but is in substantial conflict and out of harmony with justice, reason and logic.

We, therefore, propose to clarify the law by a clear, comprehensive and definitive opinion.

Any investigation into the Tennessee law governing tenancies by the entireties must start with the landmark case of Ames v. Norman, 36 Tenn. 683 (1857). In holding that the interest of the husband may be sold on execution for the satisfaction of his debts, but his grantee holds in subordination of the contingent right of the wife, the Court, after discussing the nature of a tenancy by the entirety, said:

"From the peculiarity of this tenancy, the unity and indivisibility of the seizin, there is some confusion in the cases respecting the power of the husband alone to make any conveyance or disposition of the land thus held during their joint lives, and also as to the right of creditors of the husband to subject the same to the satisfaction of the husband's debts. But upon examination of the authorities, it appears to be settled that during their joint lives the husband may dispose of the estate. He may lease or mortgage it, or it may be seized and sold upon execution for his debts. The doctrine, properly understood, is that the husband, without the wife's joining him in the conveyance, cannot alien the estate, so as to affect the interest of the wife in case she survives him, as in that event she will be entitled to the whole."

Justice Beard, speaking for the Court in Cole Manufacturing Co. v. Collier, 95 Tenn. 115, 31 S.W. 1000 (1895), said:

"It may be conceded that at common law the husband, during coverture, had the unlimited right to the usufruct of this estate, and that he could mortgage the property, or otherwise make a valid transfer of the possession of the same. (Citing cases)

'This right necessarily resulted from the common-law view of the effect of marriage upon the wife's property rights. Marriage conferred upon the husband the dominion of the wife's real estate. The rents and profits belonged to him jure mariti. They were not only under his personal control, but they could be seized by his creditors.' "

With reference to tenancies by the entirety, the Court said:

"This estate, therefore, being a 'unit of indivisible part,' in which the wife, no less than the husband, 'is the owner of the whole from the moment of the conveyance to them,' and equally with him entitled to the whole (McCurdy v. Canning, 64 Pa.St. 39) ; and it being apparent also that his right to collect the entire rents rests alone jure mariti, and there being no way for the purchaser of the husband's interest to dispossess him without at the same time dispossessing the wife, we have no hesitation in holding that the act of 1849–50, (sec. 3338, Mill. & V.Code) excludes such purchasers from possession against the wife." 95 Tenn. at 119–123, 31 S.W. at 1001.

The nature of the estate is further discussed and commented upon in Beddingfield v. Estill & Newman, 118 Tenn. 39, 100 S.W. 108 (1906).

Commenting upon the four indispensable unities of time, title, interest and possession, the Court in Bennett v. Hutchens, 133 Tenn. 65, 70, 179 S.W. 629 (1915), held that neither the husband nor the wife can dispose of any part without the assent of the other but the whole must go to the survivor.

In Hux v. Russell, 138 Tenn. 272, 197 S.W. 865 (1917), the Court, citing Ames and Cole Mfg. Co., recognized the general rule of the common law to be that the husband has full control of, and the right to, the rents, profits and usufruct of the property held as tenants by the entireties, to the exclusion of the wife.

The Married Women's Emancipation Act (Ch. 26, Acts of 1913) (T.C.A. § 36–601) reads as follows:

"*Be it enacted by the General Assembly of the State of Tennessee,* That married women be, and are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married."

In *1918,* this Court in Gill v. McKinney, 140 Tenn. 549, 205 S.W. 416, relying and quoting at length from Ames v. Norman, *supra,* held that the Legislature, in enacting Chapter 26 of the Acts of 1913, intended to abolish estates by the entireties. William J. Harbison, Esquire (now a member of this Court), writing in the Vanderbilt Law Review, characterized this decision as being "unfortunate and wholly unexpected." (See Harbison, Domestic

Relations, 1956 Tennessee Survey, 9 Vand. L.Rev. 990, 998–99).

We concur in this view. This decision has released a veritable Pandora's box of legal pandemonium and, in our view, nothing in the Married Women's Emancipation Act supports the Court's conclusion.

It is interesting to note, in view of cases hereinafter cited, the opinion of the Court in Morton v. State, 141 Tenn. 357, 209 S. W. 644 (1918), where it is stated:

"By our Married Woman's Act of 1913 (Acts 1913, c. 26), the policy of this state was completely changed, so that *married women are no longer under the disability of coverture, and are completely emancipated.* (Emphasis ours)

In Kellar v. Kellar, 142 Tenn. 524, 221 S.W. 189 (1920) this Court declined to reconsider its holding in *Gill.*

In McGhee v. Henry, 144 Tenn. 548, 234 S.W. 509 (1921), the Court held that neither tenant by the entirety could separate his interest from the other except by the joint action of both or by operation of law, and neither had the power of alienation so as to prejudice the other.

In *1919,* the Legislature repealed Chapter 26, of the Acts of 1913 (see Chapter 141, Acts 1919), and re-enacted it in its present form (T.C.A. § 36–601). The second section of the amendatory act (carried forward into the Code as Sec. 36–602) reads as follows:

"*Be it further enacted,* That nothing in this Act shall be construed as abolishing tenancies by the entirety, and as affecting the husband's right of curtesy."

In 1932, in the case of Stegall v. Chattanooga, 16 Tenn.App. 124, 66 S.W.2d 266, the Court of Appeals for the Eastern Section held that the purpose of the amendatory act was to meet the holding in *Gill* and to *restore the disability of the wife* in reference to the estate held by her husband and her as tenants by the entirety. Based

on this theory, the Court held that the right of action for damages to property held as tenants by the entirety was vested absolutely in the husband and that he could release it without the consent of the wife or sue thereon without joining her as a party.

In *1934,* the Supreme Court, speaking through Chief Justice Grafton Green, in Alfred v. Bankers' & Shippers' Insurance Co., 167 Tenn. 278, 68 S.W.2d 941, without referring to *Stegall,* rejected the idea that the Married Women's Act, as amended, re-instated the common law in respect to estates by the entirety. The following language from that case is pertinent:

"Nor can it be said that the husband is the dominating personality in the tenancy, since the passage of the Married Women's Emancipation Act. That statute merely provided that it should not be construed as abolishing tenancies by the entirety. As intimated in Campbell v. Campbell, 167 Tenn. 77, 66 S.W.2d 990, decided January 13, much of the husband's domination over the estate by the entirety came by reason of his common-law *jus mariti* with respect to the wife's property, and not by virtue of the tenancy itself. Cole Mfg. Co. v. Collier, 95 Tenn. 115, 31 S.W. 1000, 30 L.R.A. 315, 49 Am.St.Rep., 921. Such *jus mariti* is largely destroyed by the act of 1919—at least during the life of the wife. 167 Tenn. at 283, 68 S.W.2d at 942.

This is an obvious repudiation of the opinion of the Court of Appeals, in *Stegall,* since, at common law, the husband was the dominating personality and *Stegall* affirmed the common law. We reaffirm this opinion by Chief Justice Green.

In Moore v. Chase, 25 Tenn.App. 239, 156 S.W.2d 84 (1941), the Court of Appeals following *Alfred,* held that it is now well established that the husband cannot dispose of anything but his own interest and the wife alone could maintain an action to protect her interests from her hus-

band's attempt to convey property, both real and personal, owned as an estate by the entirety.

A year later, the Court of Appeals, in Williams v. Cravens, 28 Tenn.App. 541, 191 S.W.2d 942 (1942), again followed *Alfred.* The Court refused to accept the claim of the complainant that a tax sale decree and deed of only the husband's interest entitled the complainant to possession of the wife's interest also. The following language is apt:

> "This because by the common law the husband had the right to usufruct and possession of land owned by him and his wife by the entirety. But this common-law rule, which resulted more from the wife's disability than from the husband's right, seems to have been *changed in this state by our statute removing the wife's common-law disabilities."* (Emphasis ours)

In Sloan v. Sloan, 182 Tenn. 162, 184 S. W.2d 391 (1945), this Court held that the purchaser of a husband's interest in an estate by the entirety where the wife does not join, stands in the husband's shoes so far as ultimate survivorship is concerned but "the purchaser . . . takes no present right to possession."

Thereafter, in 1954, the Supreme Court, in Irwin v. Dawson, 197 Tenn. 314, 273 S. W.2d 6, held that a lease of realty executed by the husband alone was invalid. Citing *Alfred,* the Court held:

> "It is well settled in this State that a husband cannot dispose of his wife's interest in an estate owned as by the tenants by the entirety, and cannot sell or encumber anything but his interest."

There is a specific holding in this case that the husband alone did not have the right to lease land held with his wife as tenants by the entirety.

Again, in 1965, the Court, in Cartwright v. Giacosa, 216 Tenn. 18, 390 S.W.2d 204, held that a contract of sale of realty executed solely by the husband, could not be enforced against the wife. Again, the Court followed *Alfred.*

In In re Guardianship, Plowman, 217 Tenn. 487, 398 S.W.2d 721 (1966), the Court held that a husband was not obligated to account to the wife for rents and profits collected by him from real property owned as tenants by the entirety.

The opinion inferentially, at least, rejects *Alfred* and adopts *Stegall.* The whole thrust of this opinion is that it operates to solidify the restoration of coverture as it existed at the common law. *Inter alia,* the Court said:

> "We have no direct holding on the point in issue in this case, but we are satisfied from our examination of the law generally, and the text writers on the subject, that a tenancy by the entirety confers upon the husband the right to possession and control of the property involved, together with the use and profits therefrom for which he is not required to make an accounting to his wife." 217 Tenn. at 492, 398 S.W.2d at 723.

The Court then makes this unusual observation:

> "To permit the wife to demand an accounting of rents collected by her husband on property owned by them as tenants by the entirety by suit at law would disrupt and injure the marriage relationship and would be of little, if any, benefit to the wife. It would, no doubt, bring an end to the relationship." 217 Tenn. at 493, 398 S.W.2d at 723.

We are constrained to doubt that any such dire and disastrous consequences would ensue if the wife were accorded equal legal status as opposed to being made legally subservient and subordinate to her husband. This is but a judicially decreed recognition of the traditional pattern of married women being forced into a subservient and supportive role that is inherently unequal, patently unfair, and at variance

with the concept of equality mandated by contemporary standards of justice.

In Covington v. Murray, 220 Tenn. 265, 416 S.W.2d 761 (1967), the Court again held that neither tenant by the entirety can separate his or her interest from the other except by joint action of both, or by operation of law.

In Mitchell v. Sinclair Refining Co., 221 Tenn. 516, 428 S.W.2d 299 (1968), the Court held that the cause of action for damage to real estate owned by the husband and wife as tenants by the entirety, vests absolutely in the husband to the exclusion of the wife during coverture. It suggests that the wife had a right to protect her interest in the land, but that right did not defeat her husband's right to use the land and to contract validly pursuant thereto. This case quotes, with approval from In re Guardianship, Plowman, *supra*, and reaffirms the proposition that the amendment to the Married Women's Emancipation Act of 1913 operated to restore the disability of the wife with reference to estates held by her and her husband as tenants by the entirety. The Court holds that there is a distinction between an ownership right and a husband's right to the control and use of an estate by the entirety.

The thrust of *Plowman* and *Mitchell* is to take Tennessee back to the old common law rule and to onerate a married woman with the ancient and antiquated common law disabilities. Moreover, there are now two distinct lines of cases in Tennessee, one accepting and one rejecting the common law view and the courts, as of this time, have not reconciled the conflict.

The latest pertinent pronouncement of our Supreme Court is Weaks v. Gress, 225 Tenn. 593, 474 S.W.2d 424 (1971), from which we quote at length because this case summarizes the *Ames* and *Cole* rule, as well as *Plowman*:

"In the *Ames* opinion the Court, by way of dictum, said that Norman, becoming invested with the rights of the husband as they existed at the time of the sale, had the right to occupy and enjoy the profits of the land as owner during the joint lives of the husband and wife. This dictum was nullified in Cole Manufacturing Co. v. Collier, 95 Tenn. 115, 31 S.W. 1000, 30 L.R.A. 315. In that case, the husband's interest in the estate by the entirety had been sold at an execution sale to satisfy his debts, and it was held that the purchaser did not step into the shoes of the husband. That the only interest purchased at the execution sale, was the right to succeed to the estate in the event the wife predeceased the husband.

'In the case of In re Guardianship of Plowman, 217 Tenn. 487, 398 S.W.2d 721, this Court expressly affirmed *Ames*, as modified by *Cole*, and approved the holding in Stegall v. Chattanooga, 16 Tenn.App. 124, 66 S.W.2d 266 (1932), that the Act of 1919, Chapter 126, now codified as § 36–602, reestablished tenancies by the entirety after their abolition by the Married Woman's Emancipation Act, Chapter 26, Public Acts of 1913, § 36–601 T.C.A., exactly as such tenancies had existed prior to the Emancipation Act so that the common law primacy of the husband in relation to such a tenancy exists at the present time.'" 225 Tenn. at 597–598, 474 S.W.2d at 426.

We have reviewed these cases and have considered them in the light of contemporary standards of justice.

We do not believe that the common law disability of coverture has any sanction in our jurisprudence or any relevance in our society. At best it is outmoded; at worst oppressive and degrading.

The net result of the holdings of *Plowman, Mitchell* and *Weaks* may be summarized as follows:

a. A tenancy by the entirety confers upon the husband the right to possession, control, rents and profits from the estate.

b. The wife has no right to an accounting.

c. The common law disability of coverture is restored as to estates held by the husband and wife as tenants by the entirety.

d. The husband is the dominant tenant, the 1919 Amendment having restored his common law primacy.

To put the present law in proper perspective, let us assume that a husband and wife, having no other assets whatsoever, simultaneously inherit the sum of $250,000.00 each and that they pool their inheritances and purchase an apartment house, taking title as tenants by the entirety. The rental income starts coming in. The husband, the dominant tenant, appropriates all rental income and expends it in accordance with his desires, without the consent of the wife and over her protest. Short of resorting to the divorce courts, she has no legal remedy. One does not have to be a "Women's Libber" or even have an educated conscience, or anything beyond an elemental sense of justice to grasp the patent unfairness of such a situation. It is not only archaic; it is gross and unconscionable.

In United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), the Supreme Court of the United States refers to the disability of coverture as a "qua int doctrine" and a "peculiar institution . . . . which is now, with some exceptions, relegated to history's legal museum."

Justice Black made this appropriate observation:

"The Texas law of 'coverture' which was adopted by its judges and which the State's legislature has now largely abandoned, rests on the old common-law fiction that the husband and wife are one. This rule has worked out in reality to mean that though the husband and wife are one, the one is the husband. This fiction rested on what I had supposed is today a completely discredited notion that a married woman, being a female, is without capacity to make her own contracts and do her own business. . . . It seems at least unique to me that this Court in 1966 should exalt this archaic remnant of a primitive caste system to an honored place among the laws of the United States."

The fact that Tennessee clings to the common law concept of coverture casts a shadow of doubt upon the intellectual consistency of our approach to the whole area of equality of the sexes, and points up the need for bringing this phase of our law into harmony with modern thinking.

■ We hold that the Married Women's Act (Ch. 26, Acts of 1913), fully and effectively eradicated the common law disability of coverture and that the amendatory act, Chapter 126, Acts of 1919, did not have the legal effect of restoring it.

We abolish the last vestige of the common law disability of coverture in Tennessee.

■ We do not abolish the estate of tenancy by the entirety, but we strip it of the artificial and archaic rules and restrictions imposed at the common law, and we fully deterge it of its deprivations and detriments to women and fully emancipate them from its burdens.

■ From this date forward each tenant shall have a joint right to the use, control, incomes, rents, profits, usufructs and possession of property so held, and neither may sell, encumber, alienate or dispose of any portion thereof except his or her right of survivorship, without the consent of the other. Any unilateral attempt will be wholly and utterly void at the instance of the aggrieved tenant and any prospective purchaser, transferee, lessee, mortgagee and the like will act at his peril.

■ Lastly we reach the matter of the ownership of the fund now in the Registry of the Court. The husband conveyed his

right of expectancy. The County has acquired the needed land for the public road. The result is that all parties in this case have received their just desserts except Mrs. Robinson. She gets the money.

It results that the judgment of the Court of Appeals, is modified and affirmed, and this cause is remanded to the Circuit Court of Trousdale County for the distribution of the fund.

The costs of this cause are taxed against Trousdale County.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

HENRY, Justice (concurring).

I wrote the main opinion to reflect the unanimous views of the Court.

While I am in full accord with the conclusions we have reached on the common law disability of coverture and share with my colleagues a sense of pride in this progressive action, I am convinced that we should have based our decision to a substantial extent, on constitutional grounds.

We can no longer countenance sex-based classifications.

I fully appreciate the traditional policy of the Courts to avoid constitutional questions where their resolution is not necessary to a decision. Sometimes issues of such overriding importance arise that the courts are under a duty to speak. This is such an issue.

The Constitution and laws of the United States recognize that a married woman is a person and an individual entitled to the same protection of the laws as other individuals regardless of ancient provisions of the common law. Alexander v. Alexander, 140 F.Supp. 925 (W.D.S.C. 1956).

My research indicates that the first decision of the Supreme Court of the United States to invalidate a sex discriminatory law was Reed v. Reed, 404 U.S. 71, 92 S. Ct. 251, 30 L.Ed.2d 225 (1971). In that case the Court held that a mandatory provision of the Idaho Probate Code giving preference to men over women in the appointment of the administrators of decedent estates is violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

Subsequently in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) the Court held that denial to unwed fathers of a hearing on fitness accorded to other parents whose custody of their children is challenged by the State constitutes a denial of the equal protection of the law.

In Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), the Court held that a statutory distinction in benefits payable to male and female members of the Air Force for their respective spouses, constitutes an unconstitutional discrimination against servicewomen and therefore violates the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

In Wiesenfeld v. Secretary of Health, Education and Welfare, 367 F.Supp. 981 (D.C.N.J.1973), the Court held that a provision of the Social Security Act [402(g)] authorizing payment of insured benefits to widows and divorced mothers but not to widowers is unconstitutional as violating equal protection under the Fifth Amendment.

A footnote to an article entitled "Are Sex-based Classifications Constitutionally Suspect?", appearing in Northwestern University Law Review, Vol. 66, No. 4 (1971–1972) contains a "mini" brief on sex as a classification. It reads as follows:

"See, e. g., Cohen v. Chesterfield County School Bd., 326 F.Supp. 1159 (E.D.Va. 1971) (mandatory maternity leave at five months pregnancy denied equal protection); Kirstein v. Rector & Visitors

of the Univ. of Virginia, 309 F.Supp. 184 (E.D.Va.1970) (state university must admit women); United States ex rel. Robinson v. York, 281 F.Supp. 8 (D. Conn.1968) (statute providing for longer sentences for women than for men convicted of the same offense held a denial of equal protection); Karczewski v. Baltimore & O. R. R., 274 F.Supp. 169 (N.D.Ill.1967) (Indiana law allowing husband, but not wife, to sue for loss of consortium, denied wife equal protection); White v. Crook, 251 F.Supp. 401 (N.D.Ala.1966) (Statute barring women completely from jury service violated the equal protection clause); Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 485 P.2d 529, 95 Cal.Rptr. 329 (1971) (statute forbidding women to work as bartenders violated the 1964 Civil Rights Act, California constitution, and the fourteenth amendment); Commonwealth v. Daniel, 430 Pa. 642, 243 A.2d 400 (1968) (statute providing for longer sentences for women than for men convicted of the same offense held invalid); State v. Crow Wing County Welfare Bd., 3 EPD ¶ 5162 (Minn. Human Rights Comm'n 1971) (refusal to grant social worker two months maternity leave violated Minnesota law and the fourteenth amendment). See also Paterson Tavern & G. O. A. v. Borough of Hawthorne, 57 N.J. 180, 270 A.2d 628 (1970) (city ordinance prohibiting employment of female bartenders was an unreasonable exercise of the police power)."

Numerous cases from other jurisdictions support the proposition that where the husband has a right of action for consortium and that right is denied the wife, the classification violates the Equal Protection Clause of the Fourteenth Amendment.[1]

I am not unmindful of our own case of Krohn v. Richardson-Merrill, Inc., 219 Tenn. 37, 406 S.W.2d 166 (1965) containing dictum to the contrary.[2] Suffice it to say, I am in complete disagreement with both the reasoning and result of that case.

I think the above cases have a real relevance to the matters under consideration. They clearly indicate a definite and substantial trend—one might say of floodtide proportions—in the direction of the elimination of sex as a proper classification.

I would hold that the application of the common law disability of coverture is violative of Section 1 of the Fourteenth Amendment to the Constitution of the United States in that married women are "citizens" of the United States and the application of this doctrine deprives them of their property without due process of law, and denies them the equal protection of the law. Moreover, said doctrine is an invidious and "suspect" classification based upon sex and marital status, and is predicated on no rational basis, and abridges their right to acquire, enjoy, lease, hold, own and benefit from their own property.

I would hold, for the same reasons, that the application of this doctrine is violative of Article 1, Section 8, of the Constitution of the State of Tennessee, in that it operates to deprive married women of their property and abridges their rights and privileges as citizens of the State, contrary to the law of the land.[3]

I am authorized to state that my brother BROCK joins me in this concurring opinion.

1. See, e. g., Owen v. Illinois Baking Corporation, 260 F.Supp. 820 (W.D.Mich.1966); Deems v. Western Maryland Railway Company, 247 Md. 95, 231 A.2d 514 (Maryland 1967); Leffler v. Wiley, 15 Ohio App.2d 67, 239 N.E.2d 235 (1968); Gates v. Foley, 247 So.2d 40 (Fla.1971); Diaz v. Eli Lilly and Company, 302 N.E.2d 555 (Mass.1973).

2. The opinion recites: "In the first place, we do not find this question to be properly and timely made by the assignments of error in this case."

3. The "law of the land" provision of Art. 1, Sec. 8 of the Tennessee Constitution is synonymous with the "due process of law" provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States. Daugherty v. State, 216 Tenn. 666, 393 S.W.2d 739 (1965).