**CARTER COUNTY BOARD OF EDUCATION COMMISSIONERS, Plaintiff-Appellee,**

v.

**AMERICAN FEDERATION OF TEACHERS et al. Defendants and Counter Claimants-Appellees,**

v.

**CARTER COUNTY, Tennessee et al., Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 22, 1980.

Certiorari Denied by Supreme Court Sept. 2, 1980.

Robert E. Banks and Lewis Merryman, Elizabethton, for defendants-appellants.

Edwin O. Norris, Edwin L. Treadway and James W. Bradford, Jr., with Hunter, Smith, Davis, Norris, Treadway & Hadden, Kingsport, for Carter County Bd. of Ed. Com'rs.

Shelburne Ferguson, Jr., and D. Bruce Shine, with Ferguson & Shine, Kingsport, for American Federation of Teachers, et al.

OPINION

SANDERS, Judge.

The issue on this appeal is whether or not the school teachers of Carter County are entitled to personal judgments against the county for the amount of salary increases they would have received for the school year 1978- 1979 had the county commissioners fixed a tax rate high enough to fund the increase rather than fixing a lower tax rate, making funding impossible.

This litigation had its origin with a labor dispute between the Carter County School Board and the American Federation of Teachers, AFL-CIO, which was the bargaining agent for the classroom teachers of Carter County. Many claims and counterclaims, pleadings, decrees, etc., were filed which are not pertinent to this appeal.

The issue involved here grew out of a counter complaint filed by the Appellee, American Federation of Teachers, AFL-CIO, on behalf of the classroom teachers of Carter County against the counter defendant-appellant, Carter County. The complaint alleges that in 1976 the appellee labor organization, the appellee board of education and the appellant Carter County (through its county commissioners usually known as Quarterly County Court) negotiated a process whereby the teachers of Carter County would, over a five-year period, receive periodic indexed pay raises with the last year resulting in a pay scale parity between teachers in the county system with the teachers in the Elizabethton city school system. When the union and the board of education negotiated the teachers' salaries for 1978–79 academic year it was agreed that the second step of the indexed pay raise would be included in the budget for teachers' salaries. The amount of money necessary for these raises was approximately $350,000. In April, 1978, the school board adopted a budget which included the funds for the raises and submitted it to the county commissioners but the county failed to approve it. On June 1 the school board issued contracts to the teachers with the request they execute them if they desired to teach

in the system for the academic year 1978-79. The contracts did not provide for a salary in dollars and cents but the salary was described as "state salary schedule + county supplement". In July the board of education resubmitted its budget to the county commissioners and again the commissioners failed to act on it. In the meantime the teachers signed their contracts and on or about August 14 began their teaching duties for the academic year 1978–79. In December the county commissioners rejected the budget as submitted by the board of education and instead of setting a tax rate sufficient to fund the proposed budget, it set a tax rate that required the elimination of the $350,000 in new funds for the proposed salary increases.

The teachers allege, in their complaint, they began their teaching duties for the 1978–79 academic year with the inducement that the "county supplement" portion of their salary would be that amount contained in the twice-presented budget and in reliance upon such inducement assumed their employment duties. They seek to recover the amount they say they are entitled to under their contracts, which is the increase based on the five-year indexing plan.

The county denies it is indebted to the teachers in any amount.

The case was heard by The Honorable Jerry Scott, sitting by interchange. He found the issues in favor of the teachers and awarded each of them a judgment for the difference in the amount of pay they received and the amount they would have received under the five-year indexing plan, which was a total of $176,262.55.

The county has appealed, assigning certain issues for determination.

The chancellor filed a memorandum opinion in which he made a finding of fact and conclusions of law. Although our conclusions of law differ from those of the chancellor, we find his finding of facts to be accurate and we adopt a paraphrased version of it as follows:

"In 1975, having received no local salary supplement increase in ten years, the teachers of Carter County became dissatisfied with the treatment which they were receiving at the hands of the Carter County Board of Educational Commissioners (herein called the School Board) and the Carter County Quarterly Court (now the Carter County Commission, herein called the County Court). Most troublesome to the teachers was the obvious disparity between the salaries paid to teachers in the county town, Elizabethton, which had a separate school system, and the salaries being paid to teachers in the county school system.

"A five member ad hoc salary committee was selected to negotiate a salary increase. . . . . On November 4, 1975, the first meeting between the Salary Committee and the School Board was held. The committee presented their complaint, but no action was taken since the School Board lacked a quorum at the meeting.

" . . . (O)n November 11, 1975, the committee met with the entire School Board which did not oppose the raise. The School Board asked to have the Education Committee and the Finance Committee of the County Court contacted.

"At the January 12, 1976 School Board Meeting, the figure of $800,000.00 was presented to the School Board as the amount necessary to bring the Carter County teachers' salaries into immediate parity with the Elizabethton city teachers' salaries. A motion was made, duly seconded and passed to hold a joint meeting between the Education Committee of the County Court, the Finance Committee of the County Court, the School Board, and the Teacher's Salary Committee.

"On February 5, 1976, a joint meeting was held. . . . . The matter was referred to the Education Committee of the County Court for resolution.

"On February 11, 1976, the persistent Salary Committee met with the Education Committee. . . . . The Education Committee devised a five year plan whereby the Carter County teachers would, at the end of five years, be paid an annual salary equal to that being paid Elizabethton city teachers. The plan required computation of the salary

of a Carter County teacher (considering his/her education and experience) if he/she had taught in the Elizabethton city system minus his/her actual salary in the Carter County system. The resulting difference would be eliminated in five steps. The first year one-fifth of the difference would be paid to the teachers; the second year one-fourth; the third year one-third; the fourth year one-half; and the fifth year the salaries would be equalized. The first year cost of the plan was computed at $168,000.00.

"At the March 2, 1976 School Board Meeting, the teachers' Salary Committee and the Chairman of the Education Committee of the County Court, appeared before the School Board and recommended this plan with the Education Committee giving its unanimous endorsement. Mrs. Finney testified that the School Board voted to include $168,000.00 for the first increment of the plan in the school budget for 1976–1977. Strangely, the minutes of this meeting reflect no action by the School Board, but contain the following statement:

" 'Cecil Harvey, Chairman of the Education Committee of the Carter County Quarterly Court told the board that the six member group was unanimous in recommending the $168,000.00, as the first phase of implementing a teacher salary index plan over a five year period.'

"A county wide teacher's meeting was held on April 5, 1976 .... The Superintendent of Schools, ... explained the plan and asked each teacher to contact their magistrate to lobby for passage of the plan.

"The next day the Salary Committee met with the Finance Committee from the County Court. ... (T)he Chairman of the Finance Committee, stated that they (the committee) would let the matter go before the whole court without a recommendation for or against.

"On April 12, 1976, when the Finance Committee again met, Mr. Treadway explained the plan to the committee and a motion was made to endorse the plan and include it in the committee's recommendation. However, the motion died for lack of a second.

"The full County Court met on April 19, 1976, and the school budget containing the first increment of the five year plan was presented by Mr. Treadway and was fully discussed by the members of the Court. The objection was that it would raise the tax rate substantially. A tentative school budget was, however, approved as presented. Included was $3,148,204.00 for teachers' salaries. This total included all funds to be paid by the State of Tennessee. Total local funds required to fund this item was listed as $513,844.00, an increase of $185,-230.00 over the 1975–1976 local appropriation. The courtroom was packed with teachers, and ... Mr. Don Treadway, a member of the County Court, cast the deciding vote ....

"At the July 19, 1976 meeting the amended school budget was finally approved. There were no amendments or changes in the budget relating to teachers' salaries. At the July meeting the tax rate is normally set by the court. However, after two roll call votes, they did not do so. The grossly inadequate minutes of this meeting do not reflect that taxes were even discussed. The proof showed that only items which are approved are ever included in the minutes of the County Court. Hence, they provide little evidence of what actually occurred in any court sessions.

"On August 9, 1976, the County Court met to set the tax rate. According to the testimony of Ms. Lucy C. Ward, a reporter for the *Elizabethton Star*, who covered the meeting, four roll call votes were required before a tax rate of $4.45 per one hundred dollars of assessed valuation was passed by a vote of 16–14. ....

"Following these actions, the teachers began their duties in the Carter County School System for the 1976–1977 school year. They were paid their increased salaries and the record shows no further controversy regarding this matter that year.

"The following year, the School Board adopted the tentative school budget in April. It included an amount equal to the second step of the five year indexing plan

for teachers' salaries. After the Board's vote to include the raise, a representative of the union came to the Board and asked for a raise to be taken out of the budget for that year and the Board complied. The 1977–1978 budget included $2,907,044.00 total funds for teachers' salaries. This budget contained increased health insurance benefits for the teachers. Because these benefits were increased, the teachers decided not to pursue step two of the five year plan that year.

"In the 1978–1979 school budget, the second step of the five year indexing plan was included in the budget approved by the School Board and presented to the County Court. This budget which included $3,313,290.00 for teachers' salaries was not approved, but a budget containing $3,117,621.00 for this item was finally approved.

"The teachers of Carter County have never received their raises representing the second step of the five year indexing plan. Hence, on December 18, 1978, the teachers' strike began, leading to the filing of this suit. . . . ."

The record shows that, in addition to the above findings of fact by the chancellor, the proof supports the allegations of the appellees' complaint concerning the negotiations between the teachers' union, the school board and the commissioners of the county court.

The proof also shows that at the time the superintendent of schools met with the teachers' negotiating representative and agreed to include funds in the budget for the 1978–79 academic year to cover the second step of the indexing plan, he told the union representative the budget would have to be approved by both the school board and the county commissioners. The proof also shows that in September, 1978, the superintendent of schools made available to the teachers a list showing what the salaries would be for the 1978–79 academic year based on "state salaries + county supplement" but it did not include the requested raise contained in the previously submitted school budget. The salaries reflected on this schedule were the salaries based on the schedule of salaries to be paid by the state, including a 7% raise over the previous year plus the amount of county supplement Carter County was already obligated to pay. Salaries reflected on this schedule were the salaries paid to the teachers for the year 1978–79.

The chancellor, in his conclusions of law, found that at the time the 1978–79 contracts were signed both the school board and the teachers believed the term "county supplement" meant an amount equal to the second increment of the five-year indexing plan. He further said, "The proof is overwhelming that such a plan was discussed and informally adopted by the County Quarterly Court on the recommendation of the school board as set forth in the 1976–77 school budget." He further said, "It is, therefore, obvious that at the time the teachers' employment contracts were entered into the parties contemplated and believed the five year indexing plan was in effect. It matters not that it is not reflected in the minutes of the County Quarterly Court, nor does it matter whether such a plan could or could not be legally adopted by that body. It matters not that the adoption of the plan is not reflected in the minutes of the School Board. It does not matter whether such a plan could or could not be legally adopted by that body. The parties reasonably believed at the time the contracts were executed that the plan existed. Compensation payable under the plan provided the consideration for the contracts which would have not been consummated without the inclusion of the county supplement in an amount equal to the second step of the five year indexing plan." He concluded that since the teachers had performed under their contracts they were entitled to recover.

The first issue presented in the briefs of both the appellant county and the appellee school board is whether or not the five-year indexing plan which was not in writing can survive the statute of frauds, T.C.A. § 23–201(5). They both argue it cannot and cite cases in support of their contentions.

We agree with them in their respective contentions but do not feel this is a controlling issue in the case.

Appellant's second issue is whether or not a county commission speaks through its minutes and whether they can be proved by parole evidence. It cites numerous cases to support its contention that the court speaks only through its minutes and they cannot be proved by parole evidence.

Although we agree with the appellant's contention on this point, again we do not think this is the controlling issue.

We think the controlling issue is whether or not the Education Professional Negotiations Act, *T.C.A.* § 49–5501, *et seq.*, was applicable to the 1978–79 negotiations between the Carter County Board of Education and the American Federation of Teachers, AFL–CIO. The appellant county and the appellee board of education say it is. The appellee AFL–CIO says it is not.

In August, 1976, the Carter County Board of Education and the Carter County American Federation of Teachers, Local 1140, AFL–CIO, entered into a collective bargaining agreement wherein the school board recognized the union as the exclusive bargaining agent of the Carter County classroom school teachers for the next three years. At all times thereafter negotiations pertaining to teachers' salaries in Carter County were carried on between the union and the school board, including the academic year 1978–79. It was known to all the parties concerned, that is, the school board, the union, and the county commissioners, that before any salary increases which might be agreed upon between the union and the school board could be paid the county commissioners must approve the necessary money for funding the increase by fixing a tax rate sufficient to raise the funds.

In 1978 the legislature passed the Education Professional Negotiations Act. It became effective March 10, 1978, and is codified under *T.C.A.* § 49–5501, *et seq.* It governs collective bargaining rights of teachers and contracts negotiated between boards of education and the representative of the teachers. This statute was in effect at the time the union and the school board negotiated the increase in the salaries for the academic year 1978–79. *T.C.A.* § 49–5512, as pertinent here, provides:

"Any items negotiated by a board of education and a professional employees' organization which require funding shall not be considered binding until such time as the body empowered to appropriate the funds has approved such appropriation. In the event the amount of funds appropriated is less than the amount negotiated, the board or its representatives and the professional employees' organization or its representatives shall renegotiate an agreement within the amount of funds appropriated."

Since the increase in salaries for the year 1978–79 which had been negotiated between the board of education and the union required funding by the county commissioners, under the statute it could not be considered binding until the commissions approved the funding. Also, since the amount of funds approved by the county commissioners was less than the amount negotiated by the board and the union, the only remedy available under the statute is for the board of education and the union to renegotiate an agreement within the funds available.

The appellee union says the above statute does not apply in the case at bar since it became the recognized representative of the teachers prior to the passage of the act. It relies upon the provisions of *T.C.A.* § 49–5516 in support of its insistence, which provides:

"APPLICATION TO PREVIOUSLY RECOGNIZED ORGANIZATIONS.— This chapter shall not operate so as to annul, modify, or preclude the renewal or continuation of any recognition heretofore entered into between a board of education and a professional employees' organization. Upon the termination of an existing agreement, subsequent professional employee organization recognition shall be governed under the provi-

sions of this chapter; provided, however, the time schedule established in § 49-5503 shall not be applicable and recognition with all accompanying rights shall become available immediately upon completion of the other required recognition procedures."

We construe this provision of the Code to only protect the rights of recognized employees' representatives at the time the act was passed. It gives the appellee union in the case at bar the right to continue to be the Carter County teachers' recognized representative for the duration of its contract, until August, 1979.

The issues are resolved in favor of the appellant, Carter County. The decree of the chancellor is reversed and the case is dismissed. The costs of this appeal, together with the costs of the trial court, are taxed to the appellee union, AFL–CIO.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.