MEMPHIS EDUCATION ASSOCIA-
TION, Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF the MEM-
PHIS CITY SCHOOL SYSTEM; Willie
Herenton, Superintendent; James
Blackburn, Tom Gill, Carl Johnson,
Malvin Mauney, Rickey Peete, Maxine
Smith, Tom Smith, Juanita Watkins,
and J.C. Williams, the duly elected
Members of the Board of Education,
Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section at Jackson.

Feb. 7, 1985.

Permission to Appeal Denied by
Supreme Court Aug. 26, 1985.

Rehearing Denied by Supreme Court
Sept. 25, 1985.

Dan M. Norwood and Deborah P. Ford of
Byrd, Cobb, Norwood, Lait, Dix and Ba-
baogh, Memphis, for plaintiff-appellant.

Samuel J. Weintraub and James H.
Stock, Jr., Weintraub, DeHart, Robinson,
Coggin & Trotter, P.C., for defendants-ap-
pellees.

MATHERNE, Retired Judge.

This lawsuit involves the interpretation
and application of certain provisions of the
Education Professional Negotiations Act,
passed in 1978 and codified as Tennessee
Code Annotated, Section 49–5–601, et seq.

The plaintiff is a professional employees'
association (Union) and represents the
teachers employed by the defendant Mem-
phis City Schools (Board). The plaintiff
Union seeks a declaratory judgment to the
effect that the Board be ordered to arbi-
trate certain grievances and be required to
specifically perform certain contractual ob-
ligations relative to the arbitration of dis-
putes. The chancellor held that the Edu-
cation Professional Negotiations Act (Act)
did not apply to the defendant Board and,
on motion of the Board, dismissed the
plaintiff's lawsuit. The main issue on ap-
peal is whether the Act applies to the
Board.

In about 1975, prior to the passage of the
Act, the Board voluntarily recognized the
Union as the bargaining agent for its
teachers. Bargaining agreements have
been continuously in effect between the
Union and the Board, with the present con-
tract effective from July 1, 1981, through
June 30, 1984, and from year to year there-
after unless specified notice is given by

either party to modify or amend the agreement.

Article IV, Grievance Procedure, of the contract between the parties provides that arbitration be the final step in settling disputes. The contract provides that arbitration be effected as follows:

If a satisfactory settlement is not reached in Step 3 the Association may, within ten (10) working days after the response at Step 3, submit the grievance to arbitration by submitting to the Superintendent's Designated Representative a joint request form for a list of seven (7) arbitrators to be supplied by the Federal Mediation and Conciliation Service (FMCS). Within ten (10) working days of receipt of said form, the Superintendent's Designated Representative shall direct the request as a joint request to the FMCS. Within ten (10) working days of receipt of the list of arbitrators, the Association shall advise the Superintendent's Designated Representative that a representative of the Association is available to select an arbitrator to hear the grievance. The parties shall select an arbitrator from the list by alternately crossing out names until only one (1) remains. Either party may elect to reject the first panel. R. 3.

We note that the foregoing contractual arbitration procedure differs from the arbitration procedure set up by the Act as shown at T.C.A. § 49–5–613.

Certain grievances arose out of the skills center operated by the Board. These grievances were not settled and on December 9, 1983, the Union submitted to the Board a joint request for a panel of arbitration to be supplied by the Federal Mediation and Conciliation Service. The Board refused to forward the request to the FMCS and further refused to proceed to arbitration as required by other provisions of Article IV of the contract. The Union filed another grievance based upon the Board's refusal to follow the contractual arbitration procedure which the Board also refused to honor by arbitration. As a re-sult, the Union filed this lawsuit on June 21, 1984.

The Board's motion to dismiss in the trial court was based upon lack of subject matter jurisdiction because the Board is excluded from the provision of the Act. The Chancellor sustained the motion on that ground.

The parties agree that upon the passage of the Act there were five school systems in the state operating under voluntary bargaining agreements. The Board is one of those five systems. It is apparent that some effort was made in the legislature to remove those five school systems from the provisions of the Act. As a result, the Act was amended by what is referred to as a "grandfather clause," which provides the following at T.C.A. § 49–5–604(b):

This part shall not operate so as to annul, modify, or preclude the renewal or continuation of any recognition heretofore entered into between a board of education and a professional employees' organization. Upon the termination of an existing agreement, subsequent professional employee organization recognition shall be governed under the provisions of this part; provided, however, the time schedule established in § 49–5–605 shall not be applicable and recognition with all accompanying rights shall become available immediately upon the completion of the other required recognition procedures.

The words "this part" refer to the entire Act which is Part 6—Collective Bargaining, of Chapter 5—Personnel, of Title 49—Education, T.C.A. The issue to be decided is whether the above quoted section removes the Board from the provisions of the Act.

The section was considered in the case of *Carter County Bd. of Ed. Com'rs v. A.F. of T.*, (Tenn.App.1980) 609 S.W.2d 512. The Carter County Board of Education Commission was one of the five school systems which had voluntarily recognized a professional employees union prior to the passage of the Act. There the union and the school system had entered into a contract which granted all teachers in the sys-

tem a raise in salary. The County Commissioners of Carter County refused to appropriate money to meet the salary increase contracted for. The union sued the county for the amount of salary increases the teachers would have received during the prior school year had the county commissioners fixed a tax rate high enough to fund the increases in salary. The court found that the Act was in full force and effect at the time the union and the school system contracted for the salary increase. The court further found that the controlling issue in the *Carter County* case was whether the contract was governed by the terms of the Act. The school system argued that the act did control; the union argued that it did not.

That portion of the Act invoked in the *Carter County* case is that portion of T.C.A. § 49–5–612(b) which provides that:

Any items negotiated by a board of education and a professional employees' organization which require funding shall not be considered binding until such time as the body empowered to appropriate the funds has approved such appropriation. In the event the amount of funds appropriated is less than the amount negotiated, the board or its representatives and the professional employees' organization or its representatives shall renegotiate an agreement within the amount of funds appropriated.

The *Carter County* court held that the Act did control the contract and therefore the only relief available to the union was to renegotiate the contract.

The union in *Carter County* relied upon the provision of T.C.A. § 49–5–604(b), the "grandfather clause" heretofore quoted in this opinion. The union argued that the Carter County school system had been grandfathered out of the Act and that therefore, the provisions of T.C.A. § 49–5–612(b) did not apply to the contract which raised the teachers' salaries. In passing on this issue the *Carter County* court held:

We construe this provision of the Code to only protect the rights of recognized employees' representatives at the time the

act was passed. It gives the appellee union in the case at bar the right to continue to be Carter County teachers' recognized representative for the duration of its contract, until August 1979.

The court dismissed the union's lawsuit.

Following the *Carter County* decision, we must hold that the Act applies to the Board in the instant case. Admittedly, the grandfather amendment, T.C.A. § 49–5–604(b), is poorly drafted. The first sentence positively states that the Act "shall not operate so as to amend, modify, or preclude the renewal or continuation of any recognition heretofore entered into" between a school system and a professional bargaining organization. This sentence should render the Act not applicable to the Board in this lawsuit, and also in the *Carter County* case. However, the second sentence states that "upon the termination of an existing agreement, subsequent professional employee organization recognition shall be governed" under the provisions of the Act. Considerable confusion has arisen concerning the meaning of the words "existing agreement" as used in the second sentence. The *Carter County* court found that the words meant "existing bargaining agreement;" whereas, it is forcefully argued in the case at bar that the words could only mean "existing recognition agreement." It does appear inconsistent for the legislature to provide in one sentence for the continuation and voluntary renewal of the recognition agreement previously entered into, and in the next sentence preclude continuation or renewal of that recognition. This problem was recognized in the article at 47 Tenn.Law Rev. 241, 261, at footnote 98, wherein it is stated:

There is an apparent inconsistency in the decision to grandfather existing bargaining relationships, Tenn.Code Ann. § 49–5516 (Supp.1979), all of which began through voluntary recognition.

The grandfather clause, *id.*, is not the least artful provision of the Act (that distinction surely belongs to the third sentence of section 10, *id.* § 49–5509),

but it is the most opaque. The first sentence of section 17 declares that the Act "shall not operate so as to annul, modify, or preclude the renewal or continuation of any recogniation heretofore entered into." *Id.* § 49–5516. The next sentence appears to require as a condition of continued recognition that a previously recognized incumbent win an election upon the expiration of its current contract. If so construed, the second sentence will "operate as to annul" every recognition previously extended. In apparent disregard of the contradiction, however, the Tennessee Attorney General has rendered an opinion that interprets the second sentence of section 17 to require a new election. 8 Op.Att'y Gen. Tenn. 9, 14 (1979). The legislative history does not support the Attorney General's conclusion. The section was amended twice, to substitute "recognition" for "agreement" in the first sentence and to add the proviso to the second. Debate centered not on renewing recognition but on preserving the recognized status of the American Federal of Teachers organization in Carter County. H–58 Tenn. State Archive audiotape, counter nos. 044–092 (1978).

The conflict of the two sentences can be minimized and ample effect given to each, by a construction that allows the filing and processing of a section 4 challenge to the incumbent union upon the expiration of its contract but permits its recognized status to continue if no reasonably prompt challenge is filed. Such a construction would rest on the presumption of continuing majority status that justifies the grandfather clause *ab initio*.

It results that the decision of the chancellor is reversed, and this lawsuit is remanded to the trial court for such further proceedings as the law allows. The cost in this court is adjudged one-half against each party. The total costs in the trial court will be there adjudged.

CRAWFORD and HIGHERS, JJ., concur.