IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 13, 2007 Session

## CITY OF COVINGTON EDUCATION ASSOCIATION v. CITY OF COVINGTON, ET AL.

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5738      Joseph H. Walker, III, Judge**

---

**No. W2006-02007-COA-R3-CV - Filed April 5, 2007**

---

Plaintiff City of Covington Education Association filed a petition for writ of mandamus and complaint for damages against Defendants City of Covington and the Covington Board of Education, alleging its members were entitled to a pay increase in addition to that paid by Defendants and to a bonus that was approved and subsequently disapproved by the Board of Education. The trial court denied the writ and entered summary judgment in favor of Defendants. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Richard L. Colbert and Courtney L. Wilbert, Nashville, Tennessee, for the appellant, City of Covington Education Association.

Edward J. McKenney, Jr., Memphis, Tennessee, for the appellee, City of Covington.

R. Dale Thomas and Jesse D. Nelson, Jackson, Tennessee, for the appellee, City of Covington Board of Education.

Valerie B. Speakman, Memphis, Tennessee, for the appellee, Tipton County Board of Education.

C. Barry Ward, Memphis, Tennessee, for the appellee, Tipton County.

### OPINION

This appeal arises from a petition for writ of mandamus and complaint for damages filed by Plaintiff City of Covington Education Association ("the CCEA") against Defendants City of

Covington ("the City") and the Covington Board of Education ("the Board"; collectively, Defendants) in May 2003. The dispute between these parties concerns two issues: 1) whether an agreed 3% increase in CCEA members' salaries for the 2002-2003 school year included or was in addition to a 1% increase in teachers' salaries mandated by the General Assembly in July 2002, effective January 1, 2003; 2) whether Defendants are obligated to pay CCEA members a one-time teachers' bonus or termination benefit where, in March 2003, the Board voted to designate $254,000 for the payment of severance bonuses and, in April 2003, voted not to pay a bonus.

The trial court denied the writ of mandamus and awarded summary judgment to Defendants. The CCEA filed a timely notice of appeal to this Court. We affirm.

### *Issues Presented*

The CCEA presents the issues for our review as follows:

(1)     Did the trial court err in effectively treating a state-ordered increase in the "state minimum" portion of teachers' salaries as negotiable at the local level by concluding that the City of Covington Board of Education could use that increase to offset a locally negotiated salary increase for teachers?

(2)     Did the trial court err in concluding that once the City of Covington Board of Education approved the payment of bonuses to teachers for which sufficient funds existed in the school system's budget, the local governing body could lawfully interfere with the payment of that bonus by exercising a line item veto over the school system's expenditure.

However, although the issues as presented by the CCEA reflect the CCEA's position, we disagree that the trial court erred in the manner the CCEA asserts. Upon review of the trial court's order and the Defendants' motions for summary judgment, we reword the issues as follows:

(1)     Whether the trial court erred in determining that the 3% salary increase provided by the contract entered into by the parties in January 2003 and retroactive to the beginning of the 2002-2003 school year included the 1% increase in teachers' salaries mandated by the General Assembly effective January 2003.

(2)     Whether the trial court erred by determining the Board's decision to withdraw its earlier approval of a severance bonus or termination benefit was within the Board's discretionary authority.

The City of Covington Board of Education raises the additional issue of whether it is a proper party to this lawsuit when it no longer exists and cannot function as a body politic.

### Standard of Review

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party moving for summary judgment must affirmatively negate an essential element of the non-moving party's claim, or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588. We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

### Analysis

We begin our analysis by noting the backdrop against which this dispute arose. In 1999, the City of Covington passed a resolution to cease operation of the City's school system. In November 2000, City residents voted pursuant to Tennessee Code Annotated § 49-2-1002 to transfer the administration of City schools to the Tipton County Board of Education. By agreement approved by court order in April 2001, the City of Covington Board of Mayor and Aldermen agreed to operate the City schools through July 2003.

Prior to 2001, the CCEA was not a negotiating unit; it voted to become a negotiating unit in May 2001. In May 2001, the CCEA and the Board began negotiating teachers' contracts. None of the CCEA negotiating team members who participated in negotiations regarding contracts for the 2002-2003 school year, including CCEA president and negotiating team member Donna Fletcher (Ms. Fletcher), had prior contract negotiating experience. In July 2002, the General Assembly approved a State increase in teachers' salaries of 1%, effective January 1, 2003. At the beginning of the 2002-2003 school year, the Board submitted a budget to the Board of Mayor and Aldermen which included a 3.5% overall increase in employee salaries. The Board of Mayor and Aldermen advised the Board that it would approve the budget contingent on a .5% decrease in the recommended salary increase. Following further negotiations, on January 21, 2003, the CCEA, the Board, the City, and the Tipton County Board of Education and Board of Commissioners entered an agreement that, by its terms, specifically was not a collective bargaining agreement and that provided the CCEA members with a 3% salary increase retroactive to the beginning of the school year.

At its March 3, 2003, meeting, the Board voted to pay severance bonuses totaling $254,000 to school staff. The Board did not specify how the total bonus monies were to be distributed among

school employees. At the meeting, Covington City Attorney Michael Whitaker (Mr. Whitaker) expressed his concern that the payment of the proposed bonuses would have adverse legal and financial consequences. On March 11, the Board of Mayor and Aldermen sought an injunction against payment of the bonuses and passed a resolution prohibiting the payment of bonuses or gratuities beyond ordinary salaries and allowances. On April 14, the Board voted to not pay severance bonuses.

The CCEA filed a petition for writ of mandamus and action for damages against the Board and the City on May 29, 2003. In its complaint, the CCEA alleged its members wrongfully were denied the State minimum salary increase of 1%, which it asserted was to be paid in addition to the 3% provided by the January 21 agreement. The CCEA also asserted its members were wrongfully denied the $254,000 bonus monies approved by the Board in March. While this matter was pending, the operation of the Covington City schools was transferred to Tipton County effective July 1, 2003, and the Covington Board of Education was dissolved. Accordingly, Tipton County and the Tipton County Board of Education were granted leave to intervene in this matter by consent orders entered September 12 and October 2, 2003, respectively. We now turn to whether the trial court erred in awarding summary judgment to Defendants on both claims.[1]

### *The Salary Increase*

CCEA and Board negotiators met through the summer of 2002 and agreed on an overall salary increase of 3.5%. In July 2002, the General Assembly approved a 1% increase in the State's portion of teachers salaries, effective January 1, 2003. On August 5, 2002, the Board approved a 3.5% overall salary increase for all employees. The Board began paying the 3.5% salary increase at the beginning of the school year.

On August 27, 2002, Dr. Jerry Woods (Dr. Woods), Director of Covington Schools, submitted the Board's proposed budget, which included the 3.5% overall salary increase, to the Board of Mayor and Aldermen. The Board of Mayor and Aldermen referred the budget to the Finance Committee. On September 23, the Finance Committee approved the school budget contingent on decreasing the salary increase to 3%. Dr. Woods explained these changes to the Board at its October 7 meeting, and the minutes of that meeting state: "since we are in the process of contract negotiations, the new raise cannot be paid until the contract document is ratified and signed." Accordingly, the salary increase was discontinued pending further negotiations. Minutes of the Board meeting of December 2, 2002, indicate that the Board and CCEA negotiating teams had not reached an agreement on salary or grievance procedures as of that date.

On January 21, 2003, the CCEA, the Covington Board of Education, the City, the Tipton County Board of Education, and the Tipton County Board of Commissioners entered an agreement which provided, in pertinent part:

---

[1]The CCEA has not appealed the trial court's denial of its petition for writ of mandamus.

1.      The City of Covington Board of Education will proceed with payment of its proposed salary increase of 3% for teachers as discussed with CEA (and retroactive to the date 3% increase ceased to be paid).  The parties agree that no court action (or action of any kind) will be taken to prevent implementation of such increase.

2.      CEA will discontinue any negotiations with the City of Covington Board of Education over wages, benefits and other terms and conditions of employment, concerning Covington City teachers, and will complete the year under the existing wages and terms and conditions without a Collective Bargaining Agreement.

. . . .

4.      This Agreement sets forth the entire understanding of the parties and can be modified only in writing, signed by the parties.

It is undisputed that the Covington City teachers and all Board employees received a 3% salary increase retroactive to the beginning of the school year.  Moreover, despite the CCEA's assertion that this agreement should be viewed as the product of a collective bargaining process, we note that the January 21 agreement, by its terms, unambiguously is not a collective bargaining agreement.

We turn to the CCEA's assertion that the City either improperly used the 1% increase in the state minimum salary to partially satisfy its agreement to pay a 3% increase in teachers' salaries in violation of Tennessee Code Annotated §§ 49-3-306 and 49-5-609, or simply failed to pay the 1% state minimum increase.  Defendants do not contend that they were not required to pay the 1% state minimum increase.  Rather, they assert the parties agreed to an overall 3% increase which included the 1% state-mandated minimum increase.  They submit that, historically, the Board of Mayor and Aldermen agreed to overall increases in teachers' salaries that included any increases mandated by the State.

This issue, as we perceive it, is one of contract interpretation.  The question before us, in its simplest terms, is whether the January 21 agreement provides for a 3% increase in teachers' salaries in addition to the State- mandated 1% increase, or whether the agreement contemplates a total increase of 3% inclusive of the 1% increase mandated by the State.  Having reviewed the entire record in this case, including the depositions of Dr. Woods and Ms. Fletcher and the minutes of the Board of Education, Finance Committee, and Board of Mayor and Aldermen, we agree with Defendants that the January 21 agreement contemplates a total overall increase of 3% that includes the 1% increase mandated by the State.

There is nothing in this record to indicate that the State-mandated increase approved by the General Assembly in July 2002 was discussed specifically by the CCEA and Board of Education

negotiating teams during the negotiating process. Additionally, there is nothing in this record to support an assertion that the CCEA expected to receive a total salary increase of 4%. Ms. Fletcher testified that the CCEA was aware that the State made a determination each year regarding whether it would provide funding for increased teacher salaries. She further testified that she had no personal knowledge of whether proposed budgeted increases for teachers' salaries historically included any State-funded increase, but that by September 2002 she was aware of the State-mandated 1% increase. Ms. Fletcher additionally testified that, during the extended negotiating process following the Finance Committee's recommendation of a 3% increase, she never indicated to CCEA members that they would receive a total increase of 4%.

Dr. Woods, moreover, testified that the Board historically had a good relationship with the Board of Mayor and Aldermen, which generally accepted the Board's recommended budget. He further testified that the Board's recommended 3.5% salary increase included the 1% increase funded by the State. Dr. Woods testified:

> Well, yes, it did include State money. If State monies had not come, the amount still would have been paid. Traditionally that was the way we have done it. And, again, on the total salary. . . . That's the overall salary. That's the local and the State.

The January 21 agreement was executed after the 1% state mandated minimum increase became effective on January 1 and contemplates a total increase of 3%, which Defendants agreed to provide retroactive to the beginning of the school year. Moreover, although the CCEA asserts its members were entitled to an increase in August 2002 pursuant to collective bargaining negotiations with the Board, their agreement could not be considered binding until the Board of Mayor and Aldermen, the body empowered to appropriate funds, approved the budget.[2] *See* Tennessee Code Annotated § 49-5-612(b); *Carter County Bd. of Ed. Comm'rs v. Am. Fed'n*, 609 S.W.2d 512, 517 (Tenn. Ct. App. 1980)(holding that where salary increases that had been negotiated between the board of education and the union required funding by the county commissioners, under Tennessee

---

[2]The Tennessee Code Provides:

When agreement is reached by the representatives of the board of education and the recognized professional employees' organization, they shall jointly prepare a memorandum of understanding, and, within fourteen (14) calendar days, present it to their appropriate governing authorities for ratification or rejection. These governing authorities, as soon as practical, shall consider the memorandum and take appropriate action. If either governing authority rejects or modifies any part of a proposed memorandum, the matter shall be returned to the parties for further negotiation. The board of education may enter into such memorandum for a period not in excess of three (3) years. Any items negotiated by a board of education and a professional employees' organization which require funding shall not be considered binding until such time as the body empowered to appropriate the funds has approved such appropriation. In the event the amount of funds appropriated is less than the amount negotiated, the board or its representatives and the professional employees' organization or its representatives shall renegotiate an agreement within the amount of funds appropriated.

Tennessee Code Annotated § 49-5-612(b)(2002).

Code Annotated § 49-5512, currently codified at § 49-5-612, the agreement could not be considered binding until the commissioners approved the funding; and that because the amount of funds approved by the county commissioners was less than the negotiated amount, the only remedy available under the statute was for the board of education and the union to renegotiate an agreement within the funds available).

In this case, there was no binding agreement to increase teachers' salaries at the beginning of the 2002-2003 school year. Rather, the Board of Mayor and Aldermen rejected the proposed budget, which included the 3.5% increase, and indicated that it would approve the budget contingent on a reduction in the proposed increase to 3%. The parties continued negotiations. When a final agreement was signed on January 21, 2003, the parties clearly were aware that a 1% increase was mandated by the State. The CCEA agreed to an increase of 3% and agreed to discontinue negotiations and "complete the year under the existing wages and terms and conditions . . . ." The parties also agreed that the January agreement constituted the "entire understanding of the parties."

CCEA actions subsequent to execution of the January 21 agreement also indicate that the CCEA accepted that the agreed 3% increase was a total increase. The minutes of the March and April 2003 Board minutes reflect that Ms. Fletcher was present at those meetings but did not assert CCEA members were not receiving the total salary increase due them. Additionally, Ms. Fletcher testified that there were no negotiations with the Board subsequent to the January 21 agreement, and that she had never advised the Board or the Board of Mayor and Aldermen that the City had any obligation to pay wages other than as set forth in the January agreement. Upon review of the entire record in this case, we find no assertion by the CCEA that it was entitled to a total salary increase of more than 3% before it filed its complaint in May 2003, less than two months before the City school system was scheduled to be transferred to Tipton County. We affirm summary judgment to Defendants on this issue.

### *Severance Bonus*

The CCEA asserts Defendants wrongly deprived its members of a severance bonus totaling $254,000 initially approved by the Board in March and subsequently rejected in April. The CCEA's argument, as we understand it, is that the City wrongfully and illegally exercised a line-item veto over a bonus provided for in the approved 2002-2003 budget.

We begin our analysis of this issue by noting that in the January 21 agreement, the CCEA agreed to "discontinue any negotiations with the City of Covington over wages, benefits and other terms and conditions of employment" and to "complete the year under the existing wages and terms." Indeed, there is nothing in the record to indicate that a severance or termination bonus was discussed or negotiated by the CCEA and the Board either prior or subsequent to the January 21 agreement. We therefore turn to the CCEA's contention that the bonus was provided for in the approved budget, and that the Board of Mayor and Aldermen's resolution against the bonus constituted an unlawful line-item veto which coerced the Board to rescind approval at its April meeting.

Having reviewed the budget passed in September 2002, we do not find that bonuses were contemplated by or included in the school budget submitted by the Board to the Board of Mayor and Aldermen. The line item provided for "other fringe benefits" within "expenditures for regular instruction program" provides $0. There simply was no line-item in the budget for severance bonuses. The only possible budgetary source from which bonuses totaling $254,000 could come was the "Fund Balance" in the amount of $258,360. Although the Fund Balance arguably contained sufficient funds to pay the proposed bonus, it is clear to this Court that the parties did not anticipate that this balance would be utilized for termination bonuses. Ms. Fletcher testified that at no time before March 2003 did the Board agree to pay a termination benefit, that bonuses had not been paid in the past, and that she was not aware that anything had been submitted to the Board of Mayor and Aldermen indicating the Board's intention to pay a severance bonus. We disagree with the CCEA that the Board of Mayor and Aldermen wrongfully exercised a line-item veto over a budgeted expenditure where bonuses were not contemplated in the approved budget.

Further, we note that although the bonus was initially approved at the Board's March 2003 meeting, the question of whether some sort of bonus should be provided to some staff members clearly arose as early as August 2002. The minutes of the August 20, 2002, Board meeting indicate that a Board member proposed giving bonuses to Central Office Staff. The motion failed for lack of a second, and the Board recommended that the matter be brought to the attention of the budget committee. In December 2002, moreover, City Attorney Whitaker advised the Board in writing against the payment of a bonus, stating:

> This "bonus" was not disclosed in the budget presented to the City of Covington to approve. There is clearly a line item where "fringe benefits" should have been disclosed. Without approval of the budget item you take to dispense, a sum this large is in my opinion illegal.

The parties do not dispute that the Board could have included a bonus in the budget or that it retained the discretion to rescind approval of the proposed bonus at its April meeting. Clearly, the Board did not include a bonus in the 2002-2003 school year budget, however, and the CCEA clearly did not anticipate receiving the bonus before March 2003. Further, the CCEA unambiguously agreed to complete the school year under the terms and conditions as existed on January 21, 2003. Additionally, although the CCEA argues that the Board was wrongfully coerced into exercising its discretion to rescind approval of a bonus, the Board disagrees with the CCEA's characterization of its action. Ms. Fletcher, the president of the CCEA, testified, moreover, that she agreed that the Board's final determination regarding the payment of a bonus was a discretionary matter.[3] We agree with Defendants that the Board acted within its discretion at the April meeting when it determined

---

[3]We additionally note that the Board's initial approval of a severance bonus included only a lump sum amount; the Board did not apportion the bonus sum, which basically consisted of the fund balance to be transferred to the Tipton County Board of Education. Rather, the CCEA requests that this matter be remanded to the trial court, and that the trial court fulfill the Board function of apportionment of the asserted bonus monies.

that it would not provide severance bonuses.  We affirm the summary judgment for Defendants on this issue.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed.  Accordingly, it is unnecessary for us to address the additional issue raised by the City of Covington Board of Education regarding whether it is a proper party to this action.  This issue is pretermitted.  Costs of this appeal are taxed to the Appellant, City of Covington Education Association, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE