FRED LENZI, Complainant, v. LOUISE COLBERG, et al., Defendants.

Western Section.   May 8, 1931.

Petition for Certiorari denied by Supreme Court.   December 19, 1931.

536

J. F. Williamson, of Memphis, for appellant.

Andrew O. Holmes, Holmes, Canale, Loch & Glankler, and Knipmeyer & Dickson, all of Memphis, for appellee.

SENTER, J. The original bill was filed in this cause by complainant against the owners of certain lots situated in the Chickasaw Gardens Subdivision in the City of Memphis. The bill alleges in substance that complainant is the owner of a certain lot or parcel of real estate, situated on the west side of Outlet Avenue in the city of Memphis, which avenue is immediately west of and adjoining the Chickasaw Gardens Subdivision; that at the time said Chickasaw Gardens Subdivision was laid out as a proposed subdivision outside of but near the city limits of the city of Memphis, that it became necessary for the owners of the Chickasaw Gardens Subdivision to submit the proposed subdivision to the city Planning Commission of the city of Memphis, and to obtain the approval of said Commission before the same could be recorded and the subdivision made; that the lots in said Chickasaw Gardens Subdivision, according to the subdivision plan as proposed did not front on Outlet Avenue, but the tier of lots on the west side of said subdivision were shown to back up to the east line of Outlet Avenue; that the property owners owning the various lots on the west side of Outlet Avenue filed a protest with the City Planning Commission, protesting against the lots backing up to Outlet Avenue. The bill further alleges that when this protest was filed, the owners and promoters of the proposed Chickasaw Gardens Subdivision had a meeting with the City Planning Commission and entered into an agreement with the protesting property owners on the west side of Outlet Avenue and with the City Planning Commission, by which it was agreed that there would be located a twenty-five foot setback line and that the rear end of the lots running back to Outlet Avenue could not be used by those buying lots in the proposed subdivision for outhouses, garages, or servants houses; and that the high iron fence which enclosed the property of the Chickasaw Gardens Subdivision, and which ran along the east margin of Outlet Avenue would not be taken down, but the same would be beautified

by the planting of ornamental shrubs, flowers, etc., along said iron fence, and that this agreement was made on behalf of the Chickasaw Gardens Subdivision owners to induce the protesting property owners on the west side of said Outlet Avenue to withdraw the protest and in order to have the City Planning Commission approve the proposed plan for the subdivision.

The bill also alleged that certain of the property owners who had purchased lots adjoining the east side of Outlet Avenue in the Chickasaw Gardens Subdivision had violated the restrictions and limitations in the use of said lots by cutting openings in the iron fence along the east side of Outlet Avenue and by erecting servants' houses and garages near the east line of Outlet Avenue and within the twenty-five foot set-back line, and had otherwise violated the agreement; and alleging that other of the defendants were proposing to violate the agreement by erecting similar outhouses, etc., within said twenty-five foot set-back line, to the detriment and damage of the property on the west side of Outlet Avenue, and making of same an alley in place of a street. The prayer of the bill sought injunctive relief to enjoin and restrain property owners from putting any buildings and outhouses, etc., nearer than twenty-five feet from the east line of Outlet Avenue, and seeking mandatory injunctive relief to compel the removal of such outbuildings, etc., as had been placed nearer than twenty-five feet to the Outlet Avenue east line and within the twenty-five foot set-back line.

Demurrers were filed by some of the defendants, and the demurrers were overruled and all the defendants answered the bill. The defendants by their answers denied the material allegations in the bill with reference to any agreement upon the part of the Chickasaw Gardens Subdivision owners that said set-back line of twenty-five feet was placed there for the benefit of the property owners on the west side of Outlet Avenue, and denied all the allegations with reference to any agreement with the property owners on the west side of Outlet Avenue. By their respective answers the purchasers of lots in the subdivision made defendants to the bill denied that there was any agreement of record, or that there was any written agreement of any kind entered into between the owners of the subdivision and the protesting owners of property on the west side of Outlet Avenue and denies that they purchased said lots with any notice, actual or constructive, that any such agreement had been made and denied that any such agreement had been made, and denied that complainant had any right to enforce any of the building restrictions and limitations contained in the plan of subdivision, and specifically plead the statute of frauds and perjuries.

The cause was heard by the Chancellor on oral evidence of witnesses under stipulation, and at the hearing of the cause the Chan-

cellor held that complainant was not entitled to any of the relief sought against any of the defendants, and accordingly decreed a dismissal of the bill at the cost of complainant. From this decree complainant prayed and was granted an appeal to this court, after a motion for a new trial had been overruled by the Chancellor. The appeal has been perfected and errors assigned.

The Chancellor held that complainant had failed to show by a preponderance of the evidence that the Chickasaw Gardens Subdivision Company had entered into any agreement with the property owners owning property on the west side of Outlet Avenue, and held that there had not been any contractual agreement reached between the owners of the proposed subdivision and the protesting owners of property on the west side of Outlet Avenue. The Chancellor further held that complainant was not the owner of any property in the subdivision, and that complainant was not entitled to the benefit of any building restrictions and limitations contained in the plan of the subdivision, and was not entitled to the injunctive relief sought.

It appears from the record that the corporate name of the subdivision corporation has been changed to the Garden Communities Corporation by amendment to the charter. This corporation became the owner of the large tract of land formerly known as the Clarence Saunders tract on which he had erected the Pink Palace, and with the view of converting it into a high class subdivision property. It was located near the city limits of the city of Memphis, and the west side of the tract extended back to the east side of a street known as Outlet Avenue, which was also outside of the city limits of the city of Memphis, prior to 1929, when it seems that all this property was taken into the city limits. It also appears that prior to the time this property was taken into the city limits, that before a subdivision could be laid off and the plan recorded within a distance of five miles of the city limits of Memphis, it was necessary to procure the approval of the Memphis City Planning Commission and the Memphis Street Commission. This was provided by special act of the legislature. When the owners and promoters of this proposed new subdivision development were planning to open this subdivision, several surveys and plats, in the nature of preliminary surveys and plats of the proposed subdivision were prepared, to be submitted to the City Planning Commission of Memphis for approval. It also appears that property owners outside of the proposed subdivision, and who owned property abutting the west side of Outlet Avenue, upon learning that the lots under the proposed new subdivision were not planned to front on Outlet Avenue, but to be backed up to Outlet Avenue, which appears to have been a street forty feet wide, and by the donation of a strip

five feet wide by the owners of the proposed subdivision, making a street forty-five feet wide, filed a written protest with the City Planning Commission. These property owners making the protest based the protest upon the fact as shown by the plat and plan that the lots adjoining the east side of Outlet Avenue backed up to the Avenue and not fronting on Outlet Avenue would make of it but an alley.

There is some conflict in the evidence on the question as to when the twenty-five foot set-back line was placed upon the plat. The defendants contend that the set-back line was placed on the plat before the protest was heard by the Planning Commission. The defendants further contend that it was placed there for the benefit of those owning lots in the proposed subdivision, and was intended as limitations or restrictions for the benefit of lot owners within the subdivision only. We think that the true facts with reference to the placing of this set-back line on the plat, referring to the set-back line on the lots backing up to Outlet Avenue, was intended to induce the owners of the property on the west side of Outlet Avenue, who were making the protest, to withdraw the protest and to satisfy them, and also the Planning Commission. It is not contended that there was any written agreement between any of the parties, but it is contended by complainant that the protesting property owners on the west side of Outlet Avenue, upon being assured that the set-back line would be the limit to which any outhouses or other buildings would be constructed, accepted the proposition and agreed to withdraw the protest, and that this set-back line was therefore placed on the plat for the benefit of those owning property on the west side of Outlet Avenue.

To this contention the defendants make two replies. First, that the property owners on the west side of Outlet Avenue did not accept, and second, that no such agreement was made. The defendants further reply, that there was no agreement made with the property owners on the west side of Outlet Avenue and no written agreement entered into between the parties. The defendants further contend that complainant purchased the property he now owns located on the west side of Outlet Avenue since the subdivision plat was approved by the City Planning Commission and filed and recorded. Complainant contends that the alleged agreement amounted to a contract between the owner of the proposed subdivision and the property owners on the west side of Outlet Avenue, and constituted a covenant running with the land.

The assignments of error are numerous. By the first five assignments it is contended that the decree of the Chancellor is contrary to the law, and contrary to the evidence, and is contrary to the preponderance of the evidence, and against the weight of the evi-

dence. By other assignments of error the question is made that the court erred in holding that the complainant could not complain of the violation of the twenty-five foot set-back on the lots of the Chickasaw Gardens subdivision, having found and held that the twenty-five foot set-back line represented a building restriction on lots in Chickasaw Gardens Subdivision; and erred in finding and holding that complainant had no contract granting to him an interest in the twenty-five feet represented by the building line shown on the plat, which plat was filed and of record. And erred in holding that complainant, the owner of property not in Chickasaw Gardens Subdivision but of adjoining property across the street on the west side of Outlet Avenue, could not complain of the violation of the twenty-five foot set-back because he was not a property owner owning property in the Chickasaw Gardens Subdivision. And that the court erred in not holding that an equitable servitude was created by the twenty-five foot set-back on said subdivision plat, and that the Garden Communities Corportion was a trustee of the benefit of the restriction for the use and benefit of the complainant, having placed said twenty-five foot set-back on the subdivision plan to meet and satisfy the demands and protests of property owners on the west side of Outlet Avenue. These are the questions presented by the numerous assignments of error.

Among other contentions made by complainant under the assignments of error, is that even though there was no acceptance by the complaining property owners of the proposal of the Chickasaw Gardens Subdivision Company to limit and restrict any buildings or outhouses within a distance of twenty-five feet from the east side of Outlet Avenue, that this was a continuing proposition, and subject to acceptance at any time in the future before the proposition was withdrawn, and cites in support of this contention the rule that an offer is a promise which is in its terms conditional upon the act, forbearance, or return promise being given in exchange for a promise or performance, and that an offer until terminated gives to the offeree a continuing power to create a contract by acceptance of the offer. We think a complete reply to this is that there was no continuing promise made to the property owners on the west side of Outlet Avenue. At most, it could only be insisted that those in charge of the development enterprise known as the Chickasaw Gardens Subdivision filed the application as required by law with the City Planning Commission of Memphis to have the subdivision project approved. The final draft of the proposed plan did show a twenty-five foot set-back line along the east side of Outlet Avenue, and notwithstanding the protest of property owners on the west side of Outlet Avenue, the City Planning Commission approved the plat and plan, whereupon the plan was recorded. There is no evidence in

the record to sustain the contention that the plat was altered to meet the approval of the owners of the property on the west side of Outlet Avenue, or that the owners of the property on the west side of Outlet Avenue withdrew their protest. It does appear that the owners on the west side of Outlet Avenue were contending before the City Planning Commission that the lots adjoining Outlet Avenue in the proposed plan of the subdivision were not made to front on Outlet Avenue, and that unless these lots were made to front on Outlet Avenue it would operate to damage their property. This contention was not sustained by the City Planning Commission. There was no contract, or any agreement rising to the dignity of a contract between the property owners of the property on the west side of Outlet Avenue and the subdivision company with reference to the building limitations and restrictions by subsequent owners of lots in the subdivision. In the general discussion before the City Planning Commission there was reference made to the set-back line, and also with reference to the intention of the promoters of the subdivision to beautify the rear end of these lots. But this seems to have been more in the nature of a discussion. In approving the plan and plat, no mention was made of any agreement upon the part of the owner of the subdivision to beautify the rear end of these lots by the planting of ornamental shrubs and flowers, nor was there any mention made and recorded in the minutes of the meeting, with reference to the building limitations and· restrictions, except such as appeared on the plat, which did show a twenty-five foot set-back line.

Under certain assignments of error it is contended that the City Planning Commission, before accepting or approving the plat, required this set-back line for the benefit of the property owners on the west side, and that this gave to the property owners on the west side of Outlet Avenue a beneficial interest in the nature of an equitable servitude, and enforceable in a court of equity. This argument proceeds upon the assumption that the City Planning Commission exacted of the Chickasaw Gardens Subdivision this condition for the benefit of the property owners on the west side of Outlet Avenue as a condition precedent to its approval of the plat and plan. We do not find that this contention is sustained by the evidence. The original bill was filed on the theory that there had been a contract between the owners of the property on the west side of Outlet Avenue and the Chickasaw Gardens Subdivision, which grew out of the controversy between the protestants and the Gardens Subdivision Company, and which was relied upon by the protestants, resulting in the withdrawal of their protest. In other words, the original bill proceeds upon the theory of the contractual obligation. Incidentally, the bill relies upon the further theory that

the agreement, if not made with the owners of the property it was made with the City Planning Commission for the use and benefit of the owners of the property. As above pointed out, the minutes of the meeting of the City Planning Commission at which the plat and plan of the proposed subdivision was approved, does not make any mention or reference to any such alleged agreement.

If there had been a contract based upon sufficient consideration, whereby the Chickasaw Gardens Subdivision Company contracted and agreed with the property owners owning property on the west side of Outlet Avenue, that in the sale of their lots there would be an enforceable building limitation and restriction and whereby purchasers of the lots could not erect buildings or other improvements within twenty-five feet of Outlet Avenue it would probably create an equitable easement enuring to the benefit of complainant as successor in title and ownership of a former owner who was a party to the contract. (Hall v. Ashford, 6 Hig., 171; Ham v. Real Estate Co. (R. I.), 5 A. L. R., 440.) But we think such an agreement to be valid would have to be in writing. (Ferrell v. Ferrell, 60 Tenn., 328; Childers v. Coleman, 122 Tenn., 109; Nunnally v. Southern Iron Co., 94 Tenn., 397; Long v. Mayberry, 96 Tenn., 378.)

Nor do we think that an agreement between the complainants' predecessor in title and the Chickasaw Gardens Corp., if proved as alleged, would be binding upon purchasers of lots in the Chickasaw Gardens Subdivision, without notice, either actual or implied, of such alleged agreement. (27 R. C. L., Sec. 528, p. 762.)

Insofar as the defendants, other than the defendant, Garden Communities Corporation, the successor to the Chickasaw Gardens Subdivision Company, it is not contended that they had any actual notice of any such alleged agreement, but complainant contends that the registered plat afforded implied notice. The registered plat only gives implied notice of the building restrictions, and which would only apply to owners of lots in the subdivision and not to outside property owners. In this situation we do not think that outside property owners can sustain the contention that the lot owners in the Chickasaw Gardens Subdivision, now the Garden Communities Corporation, were charged with any notice of the alleged agreement between the Chickasaw Gardens Company and the owners of property on the west side of Outlet Avenue. Certainly, the twenty-five foot set-back line appearing on the recorded plat, would not give any notice of any such alleged agreement.

Without further burdening this opinion with details, we are of the opinion that under the facts as disclosed by the record, and the law applicable thereto, there was no error in the decree of the Chancellor. We are of the opinion that only owners of lots in this subdivision can be heard to complain against violation of the build-

ing restrictions and limitations as shown by the recorded plat, and this right to complain does not extend to owners of property outside of the subdivision. At the time the owners of property on the west side of Outlet Avenue, which was then outside of the city limits of the city of Memphis, purchased their property there was an avenue forty feet wide in front of their property, and which extended to the west margin of the property subsequently acquired by the Chickasaw Gardens Subdivision Company. Subsequent owners of the property on the east side of this avenue could make such improvements as they desired to make, just so it would not constitute a nuisance.

It follows that all assignments of error are overruled, and the decree of the Chancellor is affirmed.

Appellant and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.