IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2003 Session

## B & B ENTERPRISES OF WILSON CO., LLC, ET AL. v. CITY OF LEBANON, ET AL.

Appeal from the Chancery Court for Wilson County
No. 02111    C.K. Smith, Chancellor

No. M2003-00267-COA-R3-CV - Filed December 16, 2004

This appeal arises from a dispute between the City of Lebanon Planning Commission and real estate developers regarding approval of a proposed subdivision. The planning commission approved the plans for the first phase of this subdivision but then disapproved the plans for the second and third phases. The developers filed a petition for writ of certiorari in the Chancery Court for Wilson County seeking judicial review of the commission's actions. The trial court granted the writ and determined that the planning commission acted arbitrarily and capriciously by denying approval of the final subdivision plans. We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Derrick C. Smith, Nashville, Tennessee, for the appellants, City of Lebanon, City of Lebanon Planning Commission, Patsy Anderson, Ronnie Kelly, David Cook, Don Fox, Claude Wilson, Joe Holbrook, Nick Locke, Jan Mangrum, Joe Hayes, and Johnnie Peyton, in their capacity as members of the Commission.

Jere N. McCulloch, Lebanon, Tennessee, for the appellees, B & B Enterprises of Wilson Co., LLC, and Hal Bone d/b/a Hal Bone Enterprises.

### OPINION

### I.

In 1998, John Hill set out to develop a subdivision called "Chaparral" containing 70 to 75 homes on a tract of real property within the City of Lebanon in Wilson County. The City of Lebanon Planning Commission initially declined to approve the subdivision, even though it complied with all applicable ordinances, because of objections by the neighbors. Mr. Hill sought judicial review of the planning commission's decision, and the Chancery Court for Wilson County concluded that

the planning commission had acted arbitrarily and capriciously and remanded the matter with directions to approve the subdivision.

In an effort to address the neighbors' concerns about increased traffic, Mr. Hill acquired additional property in order to construct a second entrance to the subdivision to lessen the burden on Chaparral Drive. Thereafter, Mr. Hill presented a revised preliminary plan for the subdivision containing 106 lots on approximately 35 acres. He also submitted for approval the final plan for Phase One containing 34 lots on approximately 10 acres. The planning commission's staff recommended approval of both plans subject to minor technical corrections. The planning commission deferred action on these plats at its June 26, 2001 meeting but returned to the matter again on July 24, 2001. At that meeting, the planning commission approved the revised preliminary plat for the entire subdivision and the final plat for Phase One "subject to staff recommendations."

At some point, Mr. Hill sold the Chaparral development to B & B Enterprises of Wilson County, LLC and Hal Bone.[1] In 2002, B & B Enterprises submitted final plans for Phases Two[2] and Three[3] for approval. The planning commission's staff recommended approval of these plats "with corrections." At its January 22, 2002 meeting, the planning commission denied the request for final approval of Phases Two and Three, apparently because of objections by neighboring property owners.

Undeterred, B & B Enterprises again brought Chaparral Phases Two and Three back to the planning commission at its February 26, 2002 meeting. The commission's staff confirmed that the Final Plans for Phases Two and Three conformed substantially with the preliminary plan approved in July 2001 and with all applicable ordinances. The remainder of the discussion focused on whether B & B Enterprises had complied with two supposed "conditions" to the July 2001 approval of the preliminary plan and on the surrounding property owners' objections to Phases Two and Three.[4] The planning commission's staff stated that B & B Enterprises had met the "conditions" discussed in July 2001. However, various property owners continued to object to Phases Two and Three because of incompatibility of the proposed construction with the surrounding neighborhood,[5] the increase in

---

[1] We will refer to B & B Enterprises and Hal Bone collectively as "B & B Enterprises."

[2] Phase Two contained 37 lots.

[3] Phase Three contained 32 lots.

[4] Despite the fact that the record of the July 24, 2001 hearing, such as it is, makes no reference to any "conditions" to the planning commission's approval of the preliminary plat for the entire subdivision, the planning commission and the developer apparently discussed including a 15-foot conservation/buffer easement on Phases Two and Three. There was also some discussion regarding increasing the size of a number of lots in the subdivision.

[5] One property owner observed:

> Right now, of course, you know what my community looks like, nice brick houses, big lots, trees, everything. Now you're going to be going with 1,200 square-foot houses, vinyl siding, possibly gravel drives.

traffic, and the possible diminution of the value of their property. The planning commission eventually succumbed to the desires of the neighboring property owners and declined to approve the final plans of Phases Two and Three by a 5 to 3 vote. The planning commission did not make findings of fact or conclusions of law, and none of the individual commissioners explained the basis for their vote during the commission's formal consideration of this project.[6]

Following the planning commission's second disapproval of the plans for Phases Two and Three of the subdivision, B & B Enterprises filed a petition for common-law writ of certiorari in the Chancery Court for Wilson County asserting that the planning commission had followed an unlawful procedure and had acted arbitrarily and capriciously when it declined to approve the plans for Phases Two and Three of the subdivision. The trial court granted the petition and, after reviewing the record of the proceedings before the planning commission, found that the planning commission had acted arbitrarily and capriciously by declining to approve the plans for Phases Two and Three of the subdivision. Accordingly, the trial court directed the planning commission to approve the plans. The planning commission has appealed.

## II.
### THE STANDARD OF REVIEW

A common-law writ of certiorari is an extraordinary judicial remedy. *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999); *Fite v. State Bd. of Paroles*, 925 S.W.2d 543, 544 (Tenn. Ct. App. 1996). It is not available as a matter of right, *Boyce v. Williams*, 215 Tenn. 704, 713-14, 389 S.W.2d 272, 277 (1965); *Yokley v. State*, 632 S.W.2d 123, 127 (Tenn. Ct. App. 1981), but rather it is addressed to the trial court's discretion. *Blackmon v. Tennessee Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 2000). Accordingly, decisions to grant or deny a common-law writ of certiorari are reviewed using the familiar "abuse of discretion" standard. *Hall v. McLesky,* 83 S.W.3d 752, 757 (Tenn. Ct. App. 2002); *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2002).

Decisions whether to grant or deny a writ of certiorari for the purpose of obtaining a board or commission's record to review differ from decisions whether to grant relief following a review of the record. The scope of review afforded by a common-law writ of certiorari is extremely limited. Reviewing courts may grant relief only when the board or agency has exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. Tenn. Code Ann. § 27-8-101 (2000); *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *Daniels v. Traughber*, 984 S.W.2d 918, 924 (Tenn. Ct. App. 1998). They may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994), (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc.*

---

[6]On February 27, 2002, the day following the hearing, the Mayor of Lebanon and another member of the planning commission prepared a self-serving "memorandum" for inclusion in the commission's file explaining their votes for denying final approval of Phases Two and Three. They stated (1) that the "conservation easement/buffer as presented was not factual" and (2) that no offer was made "to reconfigure lots contiguous to Ponderosa Trail for more compatible sizing."

*v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996), or (3) substitute their judgment for that of the lower tribunal, *421 Corp. v. Metropolitan Gov't*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000).

Once a trial court reviews a local board's or commission's record, it must make written findings of fact and conclusions of law supporting its decision either to grant or to deny the requested relief. Tenn. Code Ann. § 27-9-111(c) (Supp. 2004). The court's findings of fact must be based on the preponderance of the evidence. Tenn. Code Ann. § 27-9-111(d). Accordingly, on appeal, we will review the trial court's findings of fact using the familiar Tenn. R. App. P. 13(d) standard of review. While Tenn. R. App. P. 13(d) requires us to defer to the trial court's factual findings as long as the evidence does not preponderate against them, we do not accord similar deference to a trial court's conclusions of law. Rather, we conduct a "pure *de novo*" review of the trial court's conclusions of law, *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 Tenn. 2001), and make our own independent conclusions regarding these issues. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998).

## III.
### THE PLANNING COMMISSION'S RECORD

Before addressing the substantive merits of this appeal, we must address the planning commission's unfortunate inattention to the legal requirements regarding its decision-making process and the preparation of the record of its proceedings once judicial review is sought. The commission's oversights have made it extremely difficult for both the trial court and this court to discharge our obligation to review the decisions regarding Phases Two and Three of the Chaparral subdivision.

## A.

Municipal planning commissions created under Tenn. Code Ann. § 13-4-101(a) (Supp. 1994) play a pivotal role in the orderly integration of a community's social and economic development with its physical environment. *See Family Golf of Nashville v. Metropolitan Gov't*, 964 S.W.2d 254, 257 (Tenn. Ct. App. 1997). As part of their planning functions, they have the authority to adopt regulations governing the development of subdivisions within their territorial jurisdiction. Tenn. Code Ann. § 13-4-303(a) (1999). In fact, no subdivision can be constructed within their territorial jurisdiction without their approval. Tenn. Code Ann. § 13-4-302(a) (Supp. 2004).

Planning commissions, like other boards and commissions of local government, are performing a quasi-judicial function when they review a proposed use of a particular tract of real property. *See Reddoch v. Smith*, 214 Tenn. 213, 222, 379 S.W.2d 641, 645 (1964); *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000); *Burson & Simpson Lodge Devs., Inc. v. Metropolitan Gov't*, No. 01A01-9805-CH-00249, 1999 WL 114257, at *2-3 (Tenn. Ct. App. Mar. 5, 1999) (No Tenn. R. App. P. 11 application filed). Their findings and determinations are public records, Tenn. Code Ann. § 13-4-102 (1999), and they are required to include in their official records

-4-

their reasons for disapproving any proposed subdivision. Tenn. Code Ann. § 13-4-304(b) (1999). Requiring planning commissions to include the reasons for their actions in their official records promotes compliance with the law and protects against arbitrary decisions. It also facilitates judicial review of the commission's decisions. *See Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d at 905.

The official record of a governmental board's or commission's actions is customarily its minutes. The courts have repeatedly observed that boards and commissions, like the planning commission in this case, speak or act officially only through their minutes and records made at duly called meetings. *See Press, Inc. v. Washington County*, 179 Tenn. 435, 439, 167 S.W.2d 329, 330 (1943); *Carter County Bd. of Educ. Comm'rs v. American Fed'n of Teachers*, 609 S.W.2d 512, 517 (Tenn. Ct. App. 1980); *Stegall v. City of Chattanooga*, 16 Tenn. App. 124, 133, 66 S.W.2d 266, 270 (1932). Accordingly, a board's or commission's minutes take center stage when courts are asked to review its decisions.[7]

A board's or commission's minutes, once approved, are the only competent evidence of its official actions. There is a strong presumption that official minutes are correct. Thus, the courts will not consider parole evidence that contradicts a board's or commission's minutes and will decline to go behind these minutes in the absence of a showing of fraud or mistake.

When a trial court issues a common-law writ of certiorari in a case like this one, the board or commission must file the entire record of its proceedings to enable the reviewing court to determine whether the petitioner is entitled to relief. *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). In this regard, Tenn. Code Ann. § 27-9-109(a) (2000) requires that "[i]mmediately upon the grant of the writ, the board or commission shall cause to be made, certified and forwarded to such court a complete transcript of the proceedings in the cause, containing also all the proof submitted before the board or commission." Thus, the board or commission whose actions are being reviewed must file a written transcript of its proceedings. *Lewis v. Bedford Bd. of Zoning Appeals*, No. M2003-00537-COA-R3-CV, 2004 WL 63439, at *5 (Tenn. Ct. App. Jan. 13, 2004) (No Tenn. R. App. P. 11 application filed). Tape recordings of the board's or commission's proceedings will not suffice. *Hayes v. Metropolitan Gov't*, No. 01A01-9108-CH-00291, 1992 WL 40194, at *10 (Tenn. Ct. App. Mar. 4, 1992) *perm. app. denied* (Tenn. May 26, 1992).

**B.**

This appeal focuses on the planning commission's actions at four meetings: June 26, 2001, July 24, 2001, January 22, 2002, and February 26, 2002. To comply with Tenn. Code Ann. § 27-2-109(a), the commission should have filed with the court transcripts of each of these proceedings. Regrettably, the commission failed to discharge its statutory obligation. It did not file transcripts of

---

[7]*See, e.g., Hedgepath v. Norton*, 839 S.W.2d 416, 417 (Tenn. Ct. App. 1992); *State ex rel. Browning-Ferris v. Board of Commr's of Knox County*, 806 S.W.2d 181, 186 (Tenn. Ct. App. 1990); *Foley v. Hamilton*, 603 S.W.2d 151, 153 (Tenn. Ct. App. 1980); *see also O'Leary v. Hall*, No. 03A01-9507-CH-00235, 1996 WL 84852, at *1-2 (Tenn. Ct. App. Feb. 27, 1996) (No Tenn. R. App. P. 11 application filed);

the portions of its June 26, 2001, July 24, 2001, and January 22, 2002 proceedings dealing with the Chaparral subdivision. While the record contains two transcripts of the February 26, 2002 proceedings, neither of these transcripts have been certified by the commission or its staff as representing a full, accurate, and complete account of what transpired during those hearings. In addition, the transcripts are inconsistent, and one transcript contains many material omissions.[8]

To compound the problem, the minutes of the four meetings provided by the planning commission do not comply with Tenn. Code Ann. § 13-4-304(b). The commission declined to approve Phases Two and Three of the Chaparral subdivision at its January 22, 2002 and February 26, 2002 meetings. While the minutes of these meetings record the fact that the commission did not finally approve Phases Two and Three, the reasons for the commission's action are conspicuously absent from the minutes.

On February 27, 2002, the day following the commission's meeting, two commission members attempted to cure this oversight by preparing and signing a "memorandum" purporting to explain the reasons for the commission's action on February 26, 2002. They instructed the commission's staff to provide copies of the memorandum to the "appropriate parties" and to include it in the commission's record. This memorandum is a nullity. Despite the fact that it is included in the planning commission's files, it is not an authoritative reflection of the commission's actions at the February 26, 2002 meeting. Therefore, it cannot be used to supplement the minutes which are the official records of the commission's actions on February 26, 2002.[9]

The commission had the obligation to provide both the trial court and this court not only with official minutes meeting the minimum statutory requirements but also with a record of its proceedings that contained a full, accurate, and complete account of what transpired with regard to the issues being presented to the courts for review. It must, therefore, bear the responsibility and suffer the consequences of its oversights. Under the facts of this case, it would be unfair to B & B Enterprises to give the planning commission an opportunity to correct the minutes of its meetings or to prepare transcripts of its proceedings. The minutes of the meetings at issue in this case were duly approved by the planning commission and are, therefore, the official records of the commission's actions with regard to the issues being raised on appeal. Accordingly, we will base our decision in this case on the record that the planning commission has provided us.

---

[8]Perhaps the commission assumed that it was not required to file transcripts of its consideration of the Chaparral subdivision because it filed the audio recordings of these proceedings. This assumption is mistaken for two reasons. First, we have already pointed out that audio recordings cannot be substituted for the statutorily required transcripts. Second, large portions of these transcripts are unintelligible.

[9]Had any member of the commission decided that the minutes did not contain a full, accurate, and complete account of the commission's actions on February 26, 2002, he or she should have suggested or requested that the minutes of the February 26, 2002 meeting be corrected. The entire commission then would have had an opportunity, on the record and in an open meeting, to determine whether its official minutes should be changed.

# IV.
## THE BASIS FOR THE PLANNING COMMISSION'S DENIAL OF PHASES TWO AND THREE
## OF THE CHAPARRAL SUBDIVISION

The planning commission's principal argument on this appeal is that the trial court erred by determining that the commission acted arbitrarily and capriciously when it declined to approve Phases Two and Three of the Chaparral Subdivision. They insist that their denial was appropriate because B & B Enterprises failed to demonstrate that it had complied with two "conditions" purportedly placed on the further development of Chaparral at the commission's July 24, 2001 hearing. This argument is undermined by the inescapable fact that the official record of the July 24, 2001 meeting contains no indication that the planning commission conditioned its approval of Phases Two and Three of the Chaparral subdivision on anything other than complying with its staff's technical recommendations regarding the plats that had been submitted.

The planning commission insists that it conditioned its July 24, 2001 approval of the entire Chaparral subdivision on the developer's agreement to include a conservation easement along the portions of Phases Two and Three and to enlarge the lots contiguous to Ponderosa Trail. However, the minutes of the July 24, 2001 belie this claim. The minutes of the July 24, 2001 meeting state:

> Rick Gregory presented the revised preliminary plat, which was previously approved and is presented again to be approved as a revised preliminary showing the major difference of a road extended. The floor was opened to questions from the audience and the board. Bill Durham asked Jere McCulloch, the spokesman for Chaparral Subdivision, if the new road would be a construction entrance and exit for the development of the property. Jere McCulloch's answer was affirmative, and also stated the first phase included a roadway from Maple Hill Road all the way back into the property to ensure a timely completion of the project. Jerry Mangrum thanked the Board for looking out for the best interest of the community. After discussion on motion by Anderson, seconded by Cook, all voting aye, preliminary plat was approved.

With regard to Phase One of the project, the commission's minutes reflect simply that "[p]lat was presented. Staff read recommendations. After discussion on motion by Durham, seconded by Anderson, all voting aye, plat was approved subject to staff recommendations."

The written staff recommendations for the July 24, 2001 meeting, both for the revised preliminary plat for the entire project and the final plat for Phase One, do not mention either a conservation easement or increasing the size of the lots along Ponderosa Trail. With regard to the entire subdivision, the staff's recommendations are limited to:

> Preliminary plat needs: identify all adjacent property owners (north, south & east), size drainage pipes, sewer pump station will be in front

yards?, correct location map, subdivision sign? – note. Subject to Engineering, Cross Connection, Fire Department requirements. With corrections, **recommend approval**.

With regard to Phase One, the staff's recommendations were as follows:

Plat needs: pond reference note 13 is incorrect, show all adjacent property owners, west dimensions 40' (lot 30) and 251.48 (lot 28) are incorrect, setback lines to accommodate houses facing Chaparral Dr. on lots 13, 18, 30 & 31? Lots 16, 17, 18 and 23 have same setback problems on final as on preliminary.

Was there agreement that lots 13, 18, 31 would front Chaparral Drive? Was the setback on lot 30 to be moved west to provide a greater setback from Chaparral Drive? Subject to Engineering, Cross Connection, Fire Department requirements. With corrections, **recommend approval**.

Approximately seventy-five years ago, this court considered a case strikingly similar to this one. In it, a neighbor of a residential subdivision in Memphis filed suit complaining that the developer of the subdivision was not abiding by an alleged agreement with the planning commission and the neighboring property owners regarding a 25-foot setback line on a portion of the development and the beautification of certain boundaries of the subdivision. The developer denied that it had made any agreements regarding the setback line or beautification. After reviewing the minutes of the planning commission's meetings, this court sided with the developer because "the minutes of the meeting of the City Planning Commission at which the plat and plan of the proposed subdivision was approved, does not make any mention or reference to any such alleged agreement." *Lenzi v. Colberg*, 13 Tenn. App. 535, 542 (1931).

In this case, as in *Lenzi v. Colberg*, the official minutes of the planning commission's July 24, 2001 meeting make no mention or reference to a conservation easement or to increasing the size of any of the lots in the subdivision. Accordingly, there is no evidence that B & B Enterprises or its predecessor agreed to make these changes or that the commission conditioned its approval of the Chaparral subdivision on these changes being made. Without evidence of these agreements, we have no alternative other than to conclude that the planning commission acted arbitrarily and capriciously on February 26, 2002, when it denied final approval of Phases Two and Three of the subdivision purportedly for failure to comply with earlier imposed conditions on the development of the property.[10]

_____

[10] The record, such as it is, makes clear that community opposition was the sole basis for the planning commission's decision to decline to approve Phases Two and Three. However, community opposition does not provide an appropriate basis for withholding approval of a proposed development that meets all applicable requirements. In this case, the planning commission's staff informed the commission that Phases Two and Three met all applicable subdivision requirements and were consistent with the preliminary plats earlier approved by the commission.

Remanding these proceedings back to the planning commission would serve no practical purpose and would cause additional hardship on B & B Enterprises. We have established, as a matter of law, that there are no legally enforceable conditions on Phases Two and Three regarding a conservation easement or increasing the size of certain lots. Further hearings cannot alter this conclusion. In addition, the planning commission's staff has already concluded that the final plats of Phases Two and Three comply substantially with the plat that was approved on July 24, 2001 and with all other applicable subdivision requirements. Accordingly, because the planning commission has no legal or factual basis for declining to approve Phases Two and Three, it has no option other than to follow the law and approve these plats.

## V.

We affirm the judgment directing the planning commission to approve the final plats of Phases Two and Three of the Chaparral subdivision and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to the City of Lebanon Planning Commission.

_____
WILLIAM C. KOCH, JR., P.J., M.S.